**Brooke Nicole TRAXEL, Respondent,**

v.

**Richard Louis TRAXEL, Appellant.**

**No. WD 70121.**

Missouri Court of Appeals, Western District.

Oct. 13, 2009.

---

**2.** Given the disposition of point one, we need   not reach point two.

Steve D. Burmeister, Independence, MO, for Respondent.

Allen S. Russell, Jr., Kansas City, MO, for Appellant.

Before Division III: THOMAS H. NEWTON, Chief Judge, and JAMES E. WELSH and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

This is an appeal from a final judgment of modification of a parenting plan. The trial court entered the modified plan based upon consent of the parties. Appellant objected to certain terms of the modified plan, and moved for a new trial as to those aspects of the modified plan. The court denied the motion and this appeal follows. We reverse and remand.

**Factual and Procedural Background**

Appellant Richard Louis Traxel ("Father") and Respondent Brooke Nicole Traxel ("Mother") were divorced on August 18, 2004. At that time, they were awarded joint legal and joint physical custody of their minor children Kayla Traxel and Abigail Traxel. Mother and Father would alternate weeks with the girls.

On August 23, 2007, Father filed a motion to modify, seeking a reduction in child support. Mother filed an answer and counter-motion, seeking modification of several aspects of the parenting plan.

On May 22, 2008, the parties appeared in court for a hearing on their pending motions. Both parties presented evidence, and Mother testified that she had had difficulty with Father's cooperation and communication in regard to the children's medical care. This was especially problematic, because Abigail, the younger of the two daughters, has serious medical issues. She was born two months premature and suffers from many mental and physical disabilities, including cerebral migrational defect with failure to thrive, borderline cerebral palsy, and epilepsy. She requires a feeding pump and formula for most of her nutrition, uses a wheelchair, does not speak, and has seizures.

During the hearing, the court ordered a recess. Following the recess, the parties stated that they had settled their disputes and agreed to a modified parenting plan. With respect to Abigail's medical needs, Mother testified as follows:

Q. All right. Now, with reference to further defining—to use your words— the parenting plan, you and he have agreed that, with reference to medical decisions for Abigail, that you and he will follow the decisions of her team of doctors provided either one of you have the right to within 30 days of any decision to retain the services or ask for a

consultation or second opinion from another medical doctor; is that correct?

A. Correct.

Q. And upon that request for a consult from another doctor, that doctor and the team of physicians will agree to consult with each other. And after such consultation, the team of doctors along with the consult will make a final decision; is that correct?

A. Correct.

Q. And you and he, as the parents of Abigail, will agree to follow their decisions, is that correct?

A. Correct.

Q. Okay. With—

A. Unless—I'm sorry. The last statement, we are to follow exactly what the doctors have ordered, correct?

Q. That's our understanding, yes.

A. Okay.

The commissioner further questioned Mother, "This is a change in custody. Do you believe it's in your daughter's best interest that this change and the decision-making authority be done in this fashion?"

Mother answered, "Absolutely."

When Father testified, he was not asked specifically about Abigail's medical decisions,[1] but the following exchange did take place:

Q: Mr. Traxel, you sat here and heard me walk through with your children's mother all the other provisions of our agreement; is that correct?

A. Yes.

Q. And are you in full agreement with all of them?

A. Yes.

The commissioner then went on to enter the following on the record:

COMMISSIONER ROSEN: And after consideration of all relevant factors pursuant to Section 452.375, first of all the Court finds that there's been a change in circumstances and that it's in the minor children's best interests that custody be modified as set forth regarding medical decisions, specifically, following the decision of the team of doctors, allowing each party within 30 days after that to get what I would—in the vernacular call a second opinion, that the team of doctors and the doctor providing the second opinion are supposed to consult, and then Petitioner and Respondent will follow the final decision of the doctors made after that. . . .

[FATHER'S COUNSEL]: That's right.

COMMISSIONER ROSEN: All right.

Thereafter, despite their testimony, the parties were unable to agree as to the language of the proposed modified parenting plan. Each side provided his or her version to the court.[2] On July 25, 2008,

---

1. Father's brief quotes his attorney asking him, "And that doctors' visits and medical treatment and school, dealing with those personnel, that's to be a decision between you, Ms. Traxel, and either the doctors or the educational providers?" and his answering, "Right." Father takes his own statement out of context. This was in the discussion of the communications with doctors and teachers, and how they were to be only among these professionals and the parents—that step-parents were to observe only. This does not speak directly to the making of medical decisions for the children generally, or Abigail specifically.

2. At this point we note the unusual nature of the proceedings below. A full hearing was not held because of the parties' supposed agreement. The record indicates, however, that Father objected to many of the terms in Mother's proposed modification judgment. This raises serious questions of whether there was a meeting of the minds. Because the court entered the modification plan based on the consent of the parties, it appears that the

the court entered a judgment of modification, with a corresponding modified parenting plan. The modified parenting plan states, in pertinent part:

### MEDICAL, HEALTH CARE AND EDUCATION DECISIONS FOR ABIGAIL:

10. All medical, dental and health care decisions for the minor child, Abigail, and how emergency care will be handled, shall be handled and decided by Abigail's Team of Doctors of Children's Mercy Hospital and/or Network, including any and all educational/treatment programs for which Abigail may attend if in her best interest. In the event either party desires a second opinion regarding the decision of Abigail's Team of Doctors of Children's Mercy Hospital and/or Network, that party shall be allowed thirty (30) days to acquire a second opinion. The Team of Doctors of Children's Mercy Hospital and/or Network, or a referral made by said doctors, and the physician providing the second opinion shall ultimately make the final decision for Abigail's treatment and both parties shall follow the decisions made by them for Abigail. . . .

### MEDICAL AND HEALTH FACILITY DECISIONS FOR ABIGAIL:

11. All decisions for the minor child, Abigail, regarding her need to ultimately be placed in a medical and/or health facility shall be decided by Abigail's Team of Doctors of Children's Mercy Hospital and/or Network. In the event either party desires a second opinion regarding the decision of Abigail's Team of Doctors of Children's Mercy Hospital and/or Network, that party shall be allowed thirty (30) days to acquire a second opinion. The Team of Doctors of

Children's Mercy Hospital and/or Network and the physician providing the second opinion shall ultimately make the final decision for Abigail's placement and both parties shall follow the decisions made by them for Abigail. . . .

### EXTRACURRICULAR ACTIVITIES:

12. . . . Activities of the minor child, Abigail, will be decided by her Team of Doctors of Children's Mercy Hospital and/or Network as to whether it is in the best interest of the minor child, Abigail, to participate in any extracurricular activities in accordance with the previous paragraph 10.

On August 25, 2008, Father filed a motion to set aside the judgment of modification and for new trial. On September 5, 2008, the court denied Father's motions without comment.

### Standard of Review

■ In reviewing a court-tried case, we affirm the judgment of the court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "There is a presumption that the best interests of the child motivate the trial court." *Buschardt v. Jones*, 998 S.W.2d 791, 796 (Mo.App. W.D.1999).

### Legal Analysis

Father claims that the trial court erred in implementing its modified parenting plan, in that the plan's provisions allowing the "Team of Doctors of Children's Mercy Hospital and/or Network" to make all of Abigail's medical and educational decisions violates the Missouri statutes governing child custody. Pursuant to section 452.375.1(2),[3] " 'joint legal custody' means

---

trial court concluded that there was an agreement.

**3.** All statutory references are to RSMo 2000, updated through the 2008 Cumulative Supplement.

that the parents share the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority." In this case, Mother and Father have had joint legal custody and joint physical custody of both of their girls.

In the three provisions of the modified parenting plan set forth above ("sections 10–12"), Father claims the Commissioner effectively assigned at least a portion of the parents' legal custody of Abigail to her "team of doctors." Section 452.375.5(5)(a) allows a court to grant custody to a third party "[w]hen [it] finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interests of the child...." However, to do this, the court must make that third person a party to the action. § 452.375.5(5)(a). Parents who share joint legal custody of a child or children can agree to designate a third party as a "tie-breaker" to resolve individual issues upon which they cannot agree and a court's acceptance of such an agreement does not violate section 452.375.1(2).

Here the trial court ordered, over Father's objection (albeit belated), that persons not a party to the litigation could, in the first instance, make decisions that would otherwise be made by the parents as legal custodians. In this case, because of Abigail's serious medical issues, these decisions are central to the exercise of legal custody. This raises serious questions of whether the trial court went beyond accepting the designation of a tie-breaker and effectively assigned at least a portion of Abigail's legal custody to her "team of doctors." But we need not resolve that issue here, because sections 10–

12 of the modified parenting plan fail for other reasons.

■ In his second point, Father contends that the trial court's modified plan is in error because the granting of authority to Abigail's "team of doctors" is too vague and indefinite to be enforceable. We agree.

■ "Provisions in a judgment should be definite and indefinite provisions are unenforceable." *Brooke v. Brooke*, 773 S.W.2d 496, 499 (Mo.App. S.D.1989) (holding that husband's "family" visitation was unenforceably vague because the word "family" is capable of many different meanings). The judgment must be "sufficiently certain to be susceptible of enforcement in the manner provided by law without requiring external proof." *Id.* While Mother claims that Abigail's team of doctors has been working with her since she was six weeks old, not one of them is individually named in the parenting plan. Nowhere is it stated how the decisions of the team of doctors are to be relayed to the parents or how any possible disputes among the team members are to be resolved. The plan also does not state how any difference of opinion between the second-opinion doctor, if consulted, and the team would be resolved. This plan simply is not workable in any practical sense.

In addition, Father argues, and we agree, that sections 10 and 12 of the modified plan approved by the court fail because they are against the weight of the evidence presented at the hearing. Even if Mother and Father had been found to have agreed to let the team of doctors make Abigail's medical decisions, it is clear from the testimony that neither parent intended for the doctors to make any educational or extracurricular decisions for Abigail. At the hearing, Mother was asked:

Q. ... And the—you talked about in sixth grade she needs—you have to find new daycare?

A. Uh-huh.

Q. Okay, and with the recommendation of the doctor on those daycare facilities, the decision should be mutual between you, Mr. Traxel and the doctors' recommendations, where they—she goes.

A. The doctors, no.

Q. Well, if they give you suggestions on where they go, but that—where she's ultimately going is a joint decision.

A. The decision of the daycare will be between her father and I, and if we can find one.

Q. Yeah. That's what I'm saying.

COMMISSIONER ROSEN: That's not what you said.

MS. VEIT: I'm sorry, Your Honor.

COMMISSIONER ROSEN: You talked about injecting the doctor into it—

MS. VEIT: Sorry.

COMMISSIONER ROSEN:—and she says the doctor is not part of this.

BY MS. VEIT:

Q. Okay. If the doctors don't have anything to do with it, that's fine, if they don't have any recommendations on locations. But you and him will make that decision together where she goes.

A. Correct.

Because sections 10 and 12 of the modified parenting plan are against the weight of the evidence as to the parents' intent to defer Abigail's educational and extracurricular activities to the team of doctors, the court erred in including these sections of the modified plan.

For all of the reasons stated above, we reverse and remand to the trial court for further modification of the parenting plan in accordance with this opinion. If the trial court does not find that the parents can agree on a workable process for making Abigail's medical, educational, and extracurricular-activity decisions, it may allocate legal custody to one parent, or a third party subject to the trial court's jurisdiction, for this purpose pursuant to section 452.375.1(2).

THOMAS H. NEWTON, Chief Judge, and JAMES E. WELSH, Judge, concur.