**BLUE RIDGE BANK AND TRUST COMPANY, Appellant,**

v.

**John A. HART, Respondent Pro Se,**

**Precision Automotive Corp., d/b/a Superior Acura, Respondent.**

No. WD 62720.

Missouri Court of Appeals, Western District.

Jan. 11, 2005.

Steven H. Mustoe, Kansas City, MO, for appellant.

John A. Hart, Kansas City, MO, pro se.

Robert O. Jester, Brandon D. Mizner, Co–Counsel, Kansas City, MO, for respondents Precision Automotive Corp., d/b/a Superior Acura.

Before ELLIS, P.J., LOWENSTEIN and BRECKENRIDGE, JJ.

PATRICIA BRECKENRIDGE, Judge.

Blue Ridge Bank and Trust Company appeals the trial court's judgment in favor of Superior Acura on Blue Ridge Bank's claim for conversion of a 2001 Cadillac that was originally purchased by John Hart, financed by Blue Ridge Bank, and subsequently sold to Superior Acura. On appeal, Blue Ridge Bank claims that the trial court erred in finding that Blue Ridge Bank failed to prove its claim of conversion because its lien was not perfected when Superior Acura purchased the vehicle. Blue Ridge Bank asserts that it properly perfected its security interest by filing a notice of lien prior to Superior Acura's purchase of the vehicle; Blue Ridge Bank was not required to file a financing statement for its lien to remain perfected because section 400.9–311(d), RSMo Cum. Supp.2003,[1] was not applicable since the vehicle was not held for sale as inventory; Blue Ridge Bank had no statutory duty to ensure the filing of an application for a new title; and the buyer-in-the-ordinary-course defense was inapplicable. Because

1. All statutory references are to the Revised Statutes of Missouri Cumulative Supplement 2003, unless otherwise indicated.

this court finds that Blue Ridge Bank was required to file a financing statement for its lien on the vehicle to remain perfected, which Blue Ridge Bank conceded it did not do, the judgment of the trial court is affirmed.

### Factual and Procedural Background

On September 27, 2001, Enterprise Leasing of Kansas sold a 2001 Cadillac through P & S Auto Auction. On the back of the vehicle's certificate of title, "Better Than New LLC" was recorded as the purchaser and John Hart signed the title as its agent. The title further indicated that, on or about October 17, 2001, Better Than New LLC, through its agent, Tom Sudik, sold the vehicle to Mr. Hart.

To finance the purchase of the vehicle, Mr. Hart applied for a loan from Blue Ridge Bank on October 19, 2001. The vehicle was still at the auto auction at that time. Mr. Hart presented Blue Ridge Bank with the vehicle's title. On his credit application, Mr. Hart indicated that he was employed, as general manager, by "BTN Auto." On Blue Ridge Bank's disbursement request and authorization form, Mr. Hart checked a box indicating that the primary purpose of the loan was for "Personal, Family, or Household Purposes or Personal Investment." The income tax returns, which Mr. Hart provided to Blue Ridge Bank in support of his application, stated that his occupation was "Auto Sales" and his spouse's occupation was "Automobile Dealer." In addition, Mr. Hart's tax documents reported income loss from Better Than New LLC. Mr. Hart's credit report obtained by Blue Ridge Bank also indicated that he was the owner of Better Than New Auto.

Based on the documents provided by Mr. Hart in support of his loan application, Blue Ridge Bank agreed to loan Mr. Hart $30,700 to purchase the vehicle. To secure the loan, Mr. Hart and Blue Ridge Bank entered into a security agreement, whereby Mr. Hart granted Blue Ridge Bank a security interest in the vehicle. Blue Ridge Bank disbursed the loan proceeds in two checks: one check payable to "P and S Auto Auction" for $25,575; and one check payable to John A. Hart for the balance of the loan, $5,075, less a $50 loan closing fee. Thereafter, on October 25, 2001, Blue Ridge Bank filed a notice of lien with the Missouri Director of Revenue. Blue Ridge Bank did not file any other documents with the Director, such as a financing statement. Neither Mr. Hart nor Blue Ridge Bank ever filed an application for new title.

On November 10, 2001, application was made to the Director for a duplicate title for the vehicle. The application indicated that the owner of the vehicle was Enterprise Leasing, that no liens existed on the vehicle, and that the duplicate title should be sent to Pitts Title Service in Independence. Consequently, the Director issued a duplicate title for the vehicle, which named Enterprise Leasing as the owner. The duplicate title did not indicate Blue Ridge Bank's lien.

An assignment of the vehicle was subsequently made on the back of the duplicate title from Enterprise Leasing to Poor Boys Auto. On November 30, 2001, Mr. Hart drove the car to Superior Acura and met with Christopher Exposito, Superior Acura's general manager, whom Mr. Hart had known for ten years. Although Mr. Exposito was familiar with Mr. Hart, Mr. Exposito had not previously done business with him. Mr. Hart represented himself as a car dealer to Mr. Exposito and told him that he had a customer who wanted a car that Superior Acura had for sale. Mr. Hart proposed trading the Cadillac for Superior Acura's car. Mr. Exposito observed that the Cadillac had Missouri

used-car-dealer's tags. An agreement was reached, and Mr. Hart sold the vehicle to Superior Acura for $23,500. Mr. Hart signed the duplicate title as an agent of Poor Boys Auto. Unaware of the existence of Blue Ridge Bank's lien, Superior Acura sold the vehicle to Superior Buick Cadillac for $24,100 on December 11, 2001. Superior Buick Cadillac then sold the vehicle to a Kansas resident. Blue Ridge Bank had no knowledge of and received no proceeds from any of the sales.

In early 2002, Blue Ridge Bank learned of the sales of the Cadillac. Eventually, it was discovered that both the application for duplicate title and the assignment on the back of the duplicate title contained the forged signatures of individuals from Enterprise Leasing. On March 18, 2002, Blue Ridge Bank filed a three-count petition.[2] In Count I, Blue Ridge Bank sought a judgment against Mr. Hart on its promissory note.[3] In Count II, Blue Ridge Bank sought damages in the amount of $32,000 from Superior Acura for conversion of the car. In Count III, Blue Ridge Bank sought punitive damages from Mr. Hart for fraud.

On January 16, 2003, the trial court conducted a bench trial. Mr. Hart, who was in default for failing to answer, failed to appear at trial. Blue Ridge Bank and Superior Acura appeared and offered evidence. On January 31, 2003, the trial court entered a default judgment in favor of Blue Ridge Bank and against Mr. Hart on Counts I and III for principle and interest in the sum of $32,605.09; $14,369 in attorney's fees and expenses; and $32,605.09 in punitive damages. The trial court granted judgment in favor of Superi-

or Acura on Blue Ridge Bank's claim in Count II for conversion.

Regarding its judgment in favor of Superior Acura, the trial court found that Blue Ridge Bank had not proved its cause of action for conversion. First, it found that Blue Ridge Bank had not perfected its lien on the vehicle. Specifically, the court found that Blue Ridge Bank failed to file a financing statement, which was required by section 400.9–311(d) because the collateral was inventory, held by a person in the business of selling vehicles. The trial court also found that, even if a financing statement was not required, Blue Ridge Bank had not perfected its lien because it never ensured that an application for a new title was filed with the Director, as required by sections 301.600 and 301.620. Alternatively, the trial court found that even if Blue Ridge Bank's lien on the vehicle was perfected, Superior Acura was a purchaser in the ordinary course of business and, consequently, took the vehicle free of even a perfected lien. Finally, the trial court found that Blue Ridge Bank did not have the right to possess the vehicle until after Superior Acura had already resold it. Following the trial court's denial of Blue Ridge Bank's motion to amend and reconsider the judgment, Blue Ridge Bank filed this appeal.[4]

### Notice of Appeal was Timely

■ Before reaching the merits of Blue Ridge Bank's appeal, it is necessary to address Superior Acura's argument, contained in its jurisdictional statement, that Blue Ridge Bank's notice of appeal was untimely, thereby divesting this court of

---

**2.** While the legal file contains Superior Acura's answer to Blue Ridge Bank's amended petition, it contains only Blue Ridge Bank's original petition and does not contain the amended petition.

**3.** At the time of trial, Mr. Hart owed a principal balance of $30,163.84 on his loan with Blue Ridge Bank for the vehicle.

**4.** Mr. Hart is not a party to this appeal.

jurisdiction. "The filing of a timely notice of appeal is mandatory and jurisdictional." *Gollehon v. Branson,* 603 S.W.2d 56, 57 (Mo.App.1980). A notice of appeal must be filed not later than ten days after the judgment or order appealed from becomes final. Rule 81.04(a). "For the purpose of ascertaining the time within which an appeal may be taken ... [a] judgment becomes final at the expiration of thirty days after its entry if no timely authorized after-trial motion is filed." Rule 81.05(a).

When a party files an authorized after-trial motion, the judgment becomes final at the end of ninety days, if the trial court fails to rule on the after-trial motion. Rule 81.05(a)(2)(A). If the court rules on the motion, the judgment becomes final on "the date of ruling of the last motion to be ruled or thirty days after entry of judgment, whichever is later." Rule 81.05(a)(2)(B). There are six after-trial motions authorized under the Supreme Court Rules:

> [A] motion to dismiss without prejudice after the introduction of evidence is commenced under Rule 67.01; a motion for a directed verdict under Rule 72.01(a); a motion for judgment notwithstanding the verdict under Rule 72.01(b); a motion to amend the judgment [under then] Rule 73.01(a)(3), [now Rule 78.04]; a motion for relief from judgment or order under Rule 74.06(a) and (b), but see, Rule 74.06(c); [5] and a motion for a new trial under Rule 78.

*Taylor v. United Parcel Serv., Inc.,* 854 S.W.2d 390, 392 n. 1 (Mo. banc 1993).

On March 3, 2003, Blue Ridge Bank filed a motion titled, "Motion to Amend and Reconsider Judgment." In the motion, Blue Ridge Bank argued that the trial court should amend its judgment to conform to the single basis the court stated in open court at the conclusion of the trial, which was that, to perfect its lien, Blue Ridge Bank should have filed a financing statement. Blue Ridge Bank also asked the trial court to reconsider its declaration or application of the law and challenged that there was substantial evidence to support its findings. Although it cited authority for its substantive claims of error, Blue Ridge Bank did not cite any rule or statute as authority for its after-trial motion.

On appeal, Superior Acura contends that Blue Ridge Bank's motion was not an authorized after-trial motion because the motion did not cite any specific statutory authority for invoking the trial court's jurisdiction. Since it was not an authorized after-trial motion, Superior Acura argues that the motion was insufficient to extend the trial court's jurisdiction beyond thirty days after the judgment was entered. Consequently, Superior Acura contends that Blue Ridge Bank's notice of appeal was untimely.[6]

To support its claim that a specific statutory cite in the motion was required, Superior Acura relies on *State, Department of Labor and Industrial Relations v. Ron Woods Mechanical, Inc.,* 926 S.W.2d 537, 540 (Mo.App.1996). In *Ron Woods,* this court rejected a party's claim that its mo-

---

**5.** Rule 74.06(c) provides:
> A motion under subdivision (b) does not affect the finality of a judgment or suspend its operation. The motion shall be made within a reasonable time and for reasons (1) and (2) and (3) of subdivision (b) not more than one year after the judgment or order was entered. The motion and a notice of a time and place for hearing on the

motion shall be served upon the parties to the judgment pursuant to Rule 54.

**6.** Because the validity of the after-trial motion impacts the timeliness of the appeal, the issue is jurisdictional and may be raised for the first time on appeal. *See D.A.D. v. J.B.D.,* 81 S.W.3d 2, 3 (Mo.App.2002).

tion to vacate, which "expressly invoked" Rule 75.01, could be construed as a motion to amend under then-Rule 73.01(a)(5), which is now found in Rule 78.07(c). *Id.* This court held that the party's "failure to specifically rely on Rule 73.01(a)(5) in their motion is sufficient, in itself, to deny it the benefits of the rule." *Id.*

Refusing to consider the allegations of a motion solely because the motion fails to cite the specific rule under which it is authorized, however, exalts form over substance. *See Worley v. Worley*, 19 S.W.3d 127, 129 (Mo. banc 2000) (stating that "[a] pleading is judged by its subject matter-not its caption"); *State ex rel. Goldberg v. Darnold*, 604 S.W.2d 826, 830 (Mo.App. 1980) (noting that "[t]he legal effect of a pleading as a statement for relief, . . . is determined not by the rubric but by the substance of the recitals"), *superseded by statute on other grounds as stated in Kansas Ass'n of Private Investigators v. Mulvihill*, 35 S.W.3d 425, 431 (Mo.App.2000).

This practice also appears to be contrary to Missouri Supreme Court cases that espouse treating after-trial motions based upon the allegations contained in the motion, regardless of the motion's style or form. In *Taylor v. United Parcel Service, Inc.*, 854 S.W.2d 390, 393 (Mo. banc 1993), the Supreme Court held that a motion titled, "Motion to Reconsider the Order of the Court Granting Defendant's Motion for Summary Judgment" was appropriately treated as a motion for new trial. In so holding, the Court noted that the motion, "despite its odd style, places before the trial court allegations of error." *Id.* The Court reiterated this principle in *Massman Construction Co. v. Missouri Highway and Transportation Commission*, 914 S.W.2d 801, 803 (Mo. banc 1996), noting "the general tendency of courts to construe improperly titled or crudely fashioned after-trial motions liberally as motions for new trial."[7] To the extent that *Ron Woods* and other cases from this court can be read to require a party to cite the specific rule under which its substantively-sufficient after-trial motion is made or else the motion will not be considered or reviewed as an authorized after-trial motion, they appear to be in conflict with *Taylor* and *Massman* and, therefore, should no longer be followed.[8]

■ Looking at the substance of Blue Ridge Bank's motion, the motion alleged errors in the language of the judgment and, thus, qualified as a motion to amend the judgment. Rule 78.07(a)(2). The motion also alleged errors of fact and law in the trial and, therefore, qualified as a motion for new trial. *Taylor*, 854 S.W.2d at 392. As a motion to amend and a motion for new trial are authorized after-trial mo-

---

7. This principle has been applied in several intermediate appellate court cases. *See, e.g., Glandon v. Daimler Chrysler Corp.*, 142 S.W.3d 174, 177 (Mo.App.2004); *Ort v. DaimlerChrysler Corp.*, 138 S.W.3d 777, 779 (Mo. App.2004); *State ex rel. Boyer v. Perigo*, 979 S.W.2d 953, 955–56 (Mo.App.1998); *Miller v. Enyeart*, 893 S.W.2d 901, 903 (Mo.App.1995); *Brown v. Beeney*, 756 S.W.2d 940, 942 (Mo. App.1988); *Farmers State Bank v. Place–Wiederholt Chevrolet–Oldsmobile, Inc.*, 747 S.W.2d 170, 172 (Mo.App.1988).

8. *See, e.g., Dangerfield v. City of Kansas City*, 108 S.W.3d 769, 774 (Mo.App.2003); *Am.*

*Family Mut. Ins. Co. v. Hart*, 41 S.W.3d 504, 512 (Mo.App.2000); *Koppenaal v. Dir. of Revenue*, 987 S.W.2d 446, 451 (Mo.App.1999); *Burns v. Dir. of Revenue*, 784 S.W.2d 918, 919–20 (Mo.App.1990). This court also disagrees with decisions from the other districts of this court that also appear to conflict with *Massman* and *Taylor*, including *Puisis v. Puisis*, 90 S.W.3d 169, 172 n. 3 (Mo.App.2002); *Wooten v. Williams*, 827 S.W.2d 282, 284 n. 2 (Mo.App.1992); *In re Marriage of Turner*, 803 S.W.2d 655, 659 (Mo.App.1991); and *Higgins v. Dir. of Revenue*, 778 S.W.2d 24, 27 (Mo. App.1989).

tions, Blue Ridge Bank's filing of its motion extended the time within which the January 31, 2003 judgment became final. The trial court ruled on the motion on April 9, 2003. Blue Ridge Bank had ten days from this date to file its notice of appeal. Blue Ridge Bank filed its notice of appeal on April 14, 2003. The notice of appeal was timely, and this court has jurisdiction over the appeal.

## Standard of Review

In a court-tried case, this court will affirm the trial court's judgment unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court reviews the evidence, along with all reasonable inferences, in the light most favorable to the trial court's judgment and disregards all contrary evidence and inferences. *Wildflower Cmty. Ass'n, Inc. v. Rinderknecht*, 25 S.W.3d 530, 534 (Mo.App.2000). As the trier of fact, the trial court determines the credibility of witnesses and is free to believe or disbelieve all or part of the witnesses' testimony. *Ken Cucchi Constr., Inc. v. O'Keefe*, 973 S.W.2d 520, 524 (Mo. App.1998).

## Blue Ridge Bank's Lien was Unperfected

In its first point on appeal, Blue Ridge Bank argues that the trial court erred in finding that it was required by section 400.9–311(d) to file a financing statement to perfect its lien on the Cadillac. It asserts that subsection (d) of section 400.9–311 is inapplicable because the Cadillac was not inventory at the time the lien was created and the debtor creating the security interest, John Hart, was not the same person as the seller to Superior Acura, Poor Boys Auto.

The Uniform Commercial Code normally requires the filing of a financing statement to perfect a security interest. Section 400.9–310(a). There are exceptions in subsection (b) of section 400.9–310, however, to this normal requirement. One of those exceptions is when the security interest is in property that is governed by a statute, regulation, or treaty, as described in section 400.9–311(a). Section 400.9–310(b)(3). The exception applies when a security interest in property is subject to a specific statute that has "requirements for [the] security interest's obtaining priority over the rights of a lien creditor." Section 400.9–311(a). Compliance with those requirements is the equivalent to the filing of a financing statement under the UCC. Section 400.9–311(b). In addition to the description in subsection (a) of the property fitting within the exception, the other subsections of section 400.9–311 set out the perimeters of the exception.

Subsections (b)-(d) address the duration of the perfection of a security interest in goods covered by a certificate of title that was perfected by filing a notice of lien and when it remains perfected. Under (b), the legislature provided that a security interest in property subject to a statute, regulation, or treaty, that is properly perfected, remains perfected notwithstanding a change in use or transfer of possession of the property, except, *inter alia*, as otherwise provided in subsection (d). Subsection (c) states that the duration and renewal of the perfection of a security interest in this type of property are governed by those statutes, regulations, or treaties. Section 400.9–311(c). Finally, subsection (d) provides that, for security interests in goods covered by a certificate of title that are inventory held for sale by the maker of the security interest, there is an exception to the rule that a security interest once perfected remains perfected despite a

change in use or transfer of possession. Subsection (d) requires the filing of a financing statement if such a change occurs. The full text of subsections (b)-(d) of Section 400.9–311 read:

(b) Compliance with the requirements of a statute, regulation, or treaty described in subsection (a) for obtaining priority over the rights of a lien creditor is equivalent to the filing of a financing statement under this article. Except as otherwise provided in subsection (d) and sections 400.9–313 and 400.9–316(d) and (e) for goods covered by a certificate of title, a security interest in property subject to a statute, regulation, or treaty described in subsection (a) may be perfected only by compliance with those requirements, and a security interest so perfected remains perfected notwithstanding a change in the use or transfer of possession of the collateral.

(c) Except as otherwise provided in subsection (d) and section 400.9–316(d) and (e), duration and renewal of perfection of a security interest perfected by compliance with the requirements prescribed by a statute, regulation, or treaty described in subsection (a) are governed by the statute, regulation, or treaty. In other respects, the security interest is subject to this article.

(d) During any period in which collateral is inventory held for sale or lease by a person or leased by that person as lessor and that person is in the business of selling or leasing goods of that kind, this section does not apply to a security interest in that collateral created by that person as debtor.

Within the statutes listed in subsection (a) within the exception for property that is subject to a statute, regulation, or treaty, where the normal requirement of filing a financing statement is not necessary or effective to perfect a security interest, are sections 301.600 to 301.661, pertaining to motor vehicles.[9] *See also Ford Motor Credit Co. v. Pedersen,* 575 S.W.2d 916, 918 (Mo.App.1978) ("Section [400.9–311] of the Uniform Commercial Code relating to the perfection of liens by filing [a financing statement] does not apply to automobiles.").

Three of the statutes within those named in subparagraph (2) of 400.9–311(a), sections 301.600 to 301.661, govern the method of perfecting a lien on motor vehicles. Section 301.600.2 provides that "a lien or encumbrance on a motor vehicle is perfected by the delivery to the director of revenue of a notice of lien." Section 301.620(2) establishes that the lienholder has the responsibility to deliver to the director the notice of lien. Section 400.9–303(d) provides that, when a notice of lien is filed as directed by chapter 306, "then the lien is perfected ... even though a valid application for a certificate of title and the applicable fee was [sic] not delivered to the appropriate authority or the certificate of title was not issued by such authority," as occurred in this case.

Relying on its compliance with sections 301.600 and 301.620(2), Blue Ridge Bank asserts that its lien was properly perfected and evidence of the sale of the vehicle without payment of the debt or permission of Blue Ridge Bank was proof of a conver-

---

**9.** Section 400.9–311(a) reads, in pertinent part:

(a) Except as otherwise provided in subsection (d), the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to:

(1) A statute, regulation, or treaty of the United States whose requirements for a security interest's obtaining priority over the rights of a lien creditor with respect to the property preempt section 400.9–310(a);
(2) Sections 301.600 to 301.661, RSMo, and section 400.2A–304[.]

sion by Superior Acura. It argues that the trial court's application of the provisions of section 400.9–311(d) to find that it was required to file a financing statement to perfect its lien was not supported by the evidence and was a misapplication of the law.

The trial court applied subsection (d) after finding that the Cadillac was inventory held for sale by Mr. Hart, Mr. Hart was in the business of selling goods such as the Cadillac, Mr. Hart created the security interest in the Cadillac, and Mr. Hart sold the Cadillac to Superior Acura. Because the trial court found that all the conditions of section 400.9–311(d) were met, the court held that the case was governed by the normal rule of the UCC, that a financing statement must be filed to perfect a security interest, rather than the exception that a security interest in a motor vehicle is perfected by filing a notice of lien.

Blue Ridge Bank concedes that, under section 400.9–311(d), where the creator of the lien was a motor vehicle dealer who holds a vehicle for sale as inventory, the perfection of a security interest is not accomplished through filing a notice of lien in compliance with the certificate-of-title statutes but, instead, through the filing of a financing statement. Thus, Blue Ridge Bank was required to file a financing statement to perfect its lien if (1) the vehicle was inventory held for sale by Mr. Hart; (2) Mr. Hart was in the business of selling vehicles; and (3) Mr. Hart, as the debtor, created the security interest. Blue Ridge Bank does not dispute that Mr. Hart was in the business of selling motor vehicles, and that Mr. Hart was the creator of the security interest in the 2001 Cadillac. Blue Ridge Bank disputes only that the 2001 Cadillac was held for sale *by Mr. Hart,* the debtor who created the security interest, and that there was substantial

evidence that the vehicle was held for sale as inventory.

■ Blue Ridge Bank contends the 2001 Cadillac was not held for sale by Mr. Hart because Poor Boys Auto, and not Mr. Hart, actually sold the vehicle to Superior Acura. Blue Ridge Bank's argument that Poor Boys Auto was the "person" who sold the vehicle to Superior Acura is founded on Poor Boys' apparent ownership of the vehicle based on the duplicate title, which shows an assignment from Enterprise Leasing to Poor Boys Auto. In Missouri, however, "a certificate of title to a motor vehicle is not conclusive proof of the ownership of such vehicle but is only prima facie evidence of ownership, capable of being rebutted by other evidence." *Landshire Food Serv., Inc. v. Coghill,* 709 S.W.2d 509, 512 (Mo.App.1986). In this case, Poor Boys' ownership of the vehicle was clearly rebutted by the evidence. The signature on the duplicate title, which allegedly transferred the vehicle to Poor Boys Auto, was forged. Consequently, title to the vehicle did not pass to Poor Boys Auto and, therefore, Poor Boys Auto acquired no ownership interest in the vehicle. *See id.* Thus, Poor Boys Auto could not have sold the vehicle to Superior Acura.

Because Poor Boys Auto acquired no ownership interest in the vehicle, only Mr. Hart could have sold the vehicle as the owner under the original, legitimate certificate of title. Additional facts supporting the conclusion that Mr. Hart sold the Cadillac were that he had possession of the vehicle, personally negotiated the sale, and signed the title over to Superior Acura. Although Mr. Hart purported to be selling the vehicle as an agent of Poor Boys Auto, there was no evidence in the record that Poor Boys Auto was a viable entity, separate from Mr. Hart, that could legally hold title to the Cadillac. For example, there

was no indicia of corporate status in the name, as required by section 351.110, RSMo 2000. This was substantial evidence to support the trial court's finding that Mr. Hart held the vehicle for sale as required by section 400.9–311(d).

Blue Ridge Bank next argues that the record contains no evidence that the vehicle was inventory at the time it made the loan. In particular, Blue Ridge Bank argues that the only evidence concerning the status of the car at the time it made the loan was information Mr. Hart provided to Blue Ridge Bank on the loan application. On the loan application, Mr. Hart indicated that he intended to use the vehicle for his own personal use. Therefore, Blue Ridge Bank argues that even though the vehicle may have been inventory at a point in time before or after it made the loan to Mr. Hart, at the time it made the loan to Mr. Hart, the vehicle was a consumer good. Blue Ridge Bank concludes that proper perfection of its lien, at the time the loan was made, protects it even if there was a subsequent change in the use of the vehicle from personal use to inventory.

Even if Blue Ridge Bank had properly perfected its lien during a period of time in which the vehicle was a consumer good, such a lien would not remain perfected "during any period in which [the vehicle] is inventory." *See* section 400.9–311(b) and (d). *See also In re Babaeian Transp. Co.,* 206 B.R. 536, 547–48 (Bankr.C.D.Cal.1997). Generally, under subsection (b) of section 400.9–311, a security interest perfected by compliance with the certificate-of-title stat-

ute "remains perfected notwithstanding a change in the use or transfer of possession of the collateral," *"[e]xcept as otherwise provided in subsection (d),"* i.e., during any period in which the collateral is inventory. (Emphasis added.) If a security interest in collateral had been properly perfected while the collateral was a consumer good and, then, subsequently, use of the collateral changed to equipment, the security interest would remain perfected. If, however, the use of the collateral changes to inventory, compliance with the certificate of title statute does not remain effective. Section 400.9–311(b) and (d). The first phrase of section 400.9–311(d) states that "[d]uring any period in which collateral is inventory" the certificate of title statute is inapplicable to perfect a security interest. (Emphasis added.) The phrase "during any period" contemplates that collateral may be a consumer good (or equipment or farm products) at one point in time, during which perfection under the certificate-of-title statute is required and effective. *See In re Babaeian,* 206 B.R. at 547.[10]

As noted by the Official Comments to the UCC, "[i]f the debtor takes goods of this kind out of inventory and uses them, say, as equipment, a filed financing statement would not remain effective to perfect a security interest."[11] Section 400.9–311 Comment 4 (2003). Correspondingly, if the debtor takes a consumer good and places it in inventory, prior compliance with a certificate-of-title statute does not remain effective to perfect a security inter-

10. This court recognizes that the applicable statute in *In re Babaeian* is unique to California. The "during any period in which collateral is inventory" language of California's statute, however, is the same as section 400.9–311(d). Thus, this court finds the analysis in *In re Babaeian* persuasive on this issue. This court expresses no opinion on other issues addressed by *In re Babaeian.*

11. UCC comments are a permissible and persuasive aid in determining legislative intent, even though they do not constitute binding authority. *Bracey v. Monsanto Co.,* 823 S.W.2d 946, 950 n. 6 (Mo. banc 1992) (citing *Groppel Co. v. U.S. Gypsum Co.,* 616 S.W.2d 49, 57 n. 7 (Mo.App.1981)).

est in such collateral during the period of time it is held as inventory. Rather, during any period of time that the collateral is inventory, a security interest is perfected only if a financing statement is filed. *See* section 400.9–311(d). Perfection under the certificate-of-title statute is not effective during any period of time in which the collateral is held as inventory. Thus, even if Blue Ridge Bank had properly perfected its security interest in the vehicle during a period of time in which Mr. Hart may have held the vehicle as a consumer good, the evidence was that, when Mr. Hart sold the vehicle to Superior Acura, the collateral was inventory and, therefore, Blue Ridge Bank's security interest would not have remained perfected.

 At the time Mr. Hart held the vehicle for sale to Superior Acura, he represented himself as a car dealer, drove the Cadillac with used-car-dealer tags, and negotiated a trade of the Cadillac to acquire a vehicle desired by a customer of Mr. Hart. These facts are sufficient to support the trial court's finding that the vehicle was inventory when it was held for sale.

During that period of time, Blue Ridge Bank's security interest would remain perfected only if it had filed a financing statement, which Blue Ridge Bank conceded it did not do. Consequently, when Mr. Hart sold the vehicle to Superior Acura, Blue Ridge Bank's security interest was unperfected.[12]

Under section 400.9–317(b), "a buyer, other than a secured party, of ... goods ... takes free of a security interest ... if the buyer gives value and receives delivery of the collateral without knowledge of the security interest ... and *before it is perfected.*" (Emphasis added.) In this case, it is undisputed that Superior Acura purchased the 2001 Cadillac for value, i.e., $23,500, received delivery of the vehicle, and was without knowledge of Blue Ridge Bank's security interest. Because Blue Ridge Bank's security interest was unperfected at the time of sale and delivery of the vehicle to Superior Acura, Superior Acura took the vehicle free of Blue Ridge Bank's security interest. Thus, the trial court did not err in entering judgment in favor of Superior Acura. Because this rul-

---

**12.** Blue Ridge Bank also argues that section 400.9–311(d)'s requirement that the filing of a financing statement is required to perfect a security interest in a vehicle that is held as inventory contradicts the plain language of section 400.9–303(d). Section 400.9–303(d) provides:

> When a notice of lien is filed in accordance with chapter 301 or 306, RSMo, then the lien is perfected and this chapter shall not govern perfection or nonperfection or the priority of the lien even though a valid application for a certificate of title and the applicable fee was not delivered to the appropriate authority or the certificate of title was not issued by such authority.

In construing a statute, consideration must be given to other statutes "involving similar or related subject matter when such statutes shed light upon meaning of the statute being construed." *State ex rel. Rothermich v. Gallagher,* 816 S.W.2d 194, 200 (Mo. banc 1991). "All consistent statutes relating to the same subject are in pari materia and are construed together as though constituting one act, whether adopted at different dates or separated by long or short intervals." *Id.* Sections 400.9–303(d) and 400.9–311(d) are interrelated and concern the issue of how perfection of a security interest in a vehicle is obtained in Missouri. Therefore, these statutes are considered in "pari materia." *Id.* "The rule of construction in such instances proceeds upon the supposition that the statutes in question are intended to be read consistently and harmoniously in their several parts and provisions." *Id.* To read section 400.9–303(d) as Blue Ridge Bank urges would render it inconsistent with section 400.9–311(d). Rather, reading the two sections consistently yields the conclusion that section 400.9–303(d) relates to perfection of a security interest by filing a notice of lien when the vehicle is not held as inventory. Section 400.9–311(d) is applicable in circumstances when the vehicle is held as inventory.

ing is dispositive of the appeal, this court need not address Blue Ridge Bank's other allegations of error.

The judgment of the trial court is affirmed.

All concur.