**EXCHANGE BANK OF MISSOURI,**
Appellant,

v.

**Gordon Lee GERLT and Willa Gerlt, Respondents.**

**No. WD 74206.**

Missouri Court of Appeals,
Western District.

May 22, 2012.

Ron Sweet, Columbia, MO, for Appellant.

William J. Daily, Glasgow, MO, for Respondents.

Before Division II: VICTOR C. HOWARD, Presiding Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

MARK D. PFEIFFER, Judge.

Exchange Bank of Missouri ("the Bank") appeals the judgment of the Circuit Court of Howard County, Missouri ("trial court"), in favor of Gordon and Willa Gerlt ("the Gerlts") on the Bank's claim for an alleged deficiency balance related to a promissory note in default. We affirm.

**Factual and Procedural Background[1]**

The Gerlts executed a $46,500 promissory note with the Bank in January 2005.

---

1. We view the facts, and all reasonable infer-   ences thereto, in the light most favorable to

The promissory note was secured with the following collateral: a 1996 Dodge Dakota pickup truck; a 1967 Ford pickup truck; a 1999 Kawasaki ATV; and a 1978 logging truck. In October 2005, though the Gerlts were then already in default under the terms of the promissory note, the Bank released all of the collateral securing the promissory note with the exception of the 1978 logging truck ("the logging truck"). In November 2005, due to the Gerlts? continuing default status, the Bank repossessed the logging truck and, without providing notice to the Gerlts as required by section 400.9–611,[2] sold the logging truck for $5,000 to Kenneth Ray ("Ray"), another customer of the Bank.

Subsequently, the Bank filed suit against the Gerlts to recover the difference between the amount paid by Ray for the collateral and the remaining amount owed under the promissory note—$55,033.32 at the time of the bench trial in 2010.

At trial, the Bank offered Ray's testimony as to his experience in the logging industry and the events surrounding his purchase of the logging truck. Ray testified that he was neither an automotive dealer nor an automobile appraiser, but he had purchased logging vehicles over his eighteen-year career in the logging industry and had spoken to other loggers to find out what they typically would pay for logging trucks. Given his experience in the industry, Ray offered the Bank $5,000 for the logging truck, and without any further negotiations, the Bank accepted Ray's offer. Though the Bank offered Ray as an expert witness on the topic of the logging truck's value, Ray never testified as to "the value" of the logging truck at the time of his purchase—only that he was willing to offer $5,000 for the logging truck and that the Bank accepted his first and only offer. Likewise, Ray never testified as to his opinion of what the logging truck would have sold for had the sale of the collateral by the Bank been in compliance with Article 9 of the Mo. UCC. Though the Gerlts objected to much of Ray's testimony at trial, the trial court permitted all of Ray's testimony to come into evidence.

Mr. Gerlt, too, testified. He explained that the large logging truck tires—fourteen in total—had been replaced not long before the November 2005 sale by the Bank and that the cost of the tires alone was in excess of $5,000. Mr. Gerlt also testified that one month before the Bank repossessed the logging truck and sold it without notice to him, he had convinced the Bank's president of the significant value of the logging truck, causing the Bank to release the two pickup trucks and ATV as additional collateral for the $46,500 promissory note.

Noting that the Bank's evidence on the value of the logging truck at the time of its sale was speculative, at best, the trial court concluded that the Bank failed to rebut the presumption under section 400.9–626 that the proceeds from the sale of the logging truck were deemed to be the equivalent of the secured obligation under the promissory note, thereby entering judgment for the Gerlts on the Bank's deficiency claim. The Bank appeals.

---

the trial court's judgment. *Courtney v. Roggy,* 302 S.W.3d 141, 145 (Mo.App. W.D.2009).

**2.** Missouri has adopted the Uniform Commercial Code and codified the same at Chapter 400 (i.e., Article 9 at section 400.9 *et seq.)* of the Revised Statutes of Missouri ("Mo.UCC"). The parties agree that Article 9 of the Mo.

UCC applies to the facts of this case. All statutory references are to RSMo 2000, as updated through the 2005 Cumulative Supplements, the version of the statutes in effect at the time of the events in question. *See Garrett v. Citizens Sav. Ass'n,* 636 S.W.2d 104, 109 (Mo.App. W.D.1982).

## Standard of Review

We review a bench-tried case under the standard outlined in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm unless there is no substantial evidence to support the verdict, it is against the weight of the evidence, or the court erroneously declares or applies the law. *Id.* We view the facts, and all reasonable inferences thereto, in the light most favorable to the trial court's judgment. *Courtney v. Roggy*, 302 S.W.3d 141, 145 (Mo.App. W.D.2009).

## Analysis

■ In its sole point on appeal, the Bank argues the trial court erred in concluding that the Bank's evidence was speculative, because the Bank argues that the trial court failed to give Ray's expert opinion on the value of the logging truck the evidentiary value deserving of expert testimony.

Whether the Bank proved the amount the truck would have sold for if the Bank had complied with Article 9 of the Mo. UCC is crucial to this case.

Under section 400.9–626(a)(3), if a secured party, such as the Bank, fails to comply with Article 9 of the Mo. UCC in the repossession and sale of collateral serving as security for the debt owed the secured party,[3] the liability of the debtor is limited to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of: (A) The proceeds of the collection, enforcement, disposition, or acceptance; or (B) The amount of proceeds that would have been realized had the non-complying secured party proceeded in accordance with the provisions of this part relating to collection, enforcement, disposition, or acceptance.

In interpreting statutes, "[t]he primary rule of statutory construction requires this Court to ascertain the intent of the legislature by considering the plain and ordinary meaning of the words used in the statute." ' *State ex rel. Womack v. Rolf*, 173 S.W.3d 634, 638 (Mo. banc 2005) (quoting *Jones v. Dir. of Revenue*, 832 S.W.2d 516, 517 (Mo. banc 1992)). This court need not apply canons of construction when a statute can be easily read and understood. *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 669 (Mo. banc 2010).

Here, the meaning of the statute is clear: Section 400.9–626 "creates a presumption that the proceeds of the sale would be equivalent to the amount of the secured obligation, and imposes on the secured party the burden of demonstrating what the amount of the recovery would have been had the sale been in compliance with Article 9." *In re Vantage Invs., Inc.*, 385 B.R. 670, 680–81 (Bankr.W.D.Mo. 2008). Without proof of what the sale proceeds would have been had the Bank complied with Article 9 of the Mo. UCC, the Bank is not entitled to a deficiency judgment.[4]

The Bank argues in its appellate briefing: "Ray testified that he had seen this particular truck, then offered, and paid, [the Bank] $5,000 for it.... That *valuation* is vital to [the Bank's] case." (Emphasis added.) Over objection by the

---

3. The Bank does not dispute that it failed to provide the notice of sale required by section 400.9–611 and, consequently, has failed to comply with Article 9 of the Mo. UCC in the disposition of the subject collateral for the Gerlts' secured obligation under the promissory note.

4. The Bank does not dispute our interpretation of this rebuttable presumption rule, noting in its brief that the Bank "could not prevail and collect its deficiency without that proof."

Gerlts, the Bank offered Ray's testimony as expert testimony on *valuation* and the trial court permitted all of Ray's testimony to come into evidence. Specifically, Ray's testimony was as follows:

Q: How did it come about that you knew that the truck was for sale through the bank? Did they call you?

[Ray]: They told me ... they were taking bids on it, or something; I don't remember.

Q: So what did you do?

[Ray]: I went out and looked at it, came back and told [the Bank] I'd give $5,000 for the truck.

Ray also testified that he had been in the logging business for eighteen years, had purchased some logging trucks over his logging career, and had spoken to other loggers about what they had paid for logging trucks. Thereafter, the following exchange took place between Ray, the parties' attorneys, and the trial court regarding a subsequent question to Ray:

[Question by the Bank's attorney to Ray]: You'd seen that truck in the past and determined it was worth five thousand, is that correct?

[Gerlts' attorney]: I'm going to object, because there's no evidence ... that he'd ever looked at the truck to determine the value.

[Bank's attorney]: I believe there was.

THE COURT: He said he'd seen the truck.

[Gerlts' attorney:] Well, he'd seen it.

THE COURT: Didn't look at it to determine the value, but overruled.

There are, however, at least two relevant problems with this evidentiary colloquy. First, the transcript is silent on what Ray's *answer* to the question was or would have been after the trial court overruled the objection. Second, what the logging truck was "worth" to Ray when he was approached by the Bank to make an offer on a repossessed logging truck would not necessarily constitute evidence proffered on the topic of establishing what the collateral would have sold for had all of the Article 9 provisions of the Mo. UCC been complied with in the repossession and sale of the collateral.

Not so coincidentally, in the trial court's judgment, the trial court stated: "Evidence of what the sale price of the logging truck would have been had the UCC been complied with was never specifically introduced. Speculation does not equal proof."

The Bank focuses its argument on appeal on the trial court's statement that "[s]peculation does not equal proof" and argues that the trial court erred by not finding Ray to be an expert and believing his testimony constituted proof of the amount the truck would have sold for in an Article 9 compliant sale of collateral. The Bank, however, ignores the fact that the trial court overruled the objections to Ray's testimony, permitted Ray's testimony to come into evidence, and the sum total of the Bank's evidence on *valuation* falls short of its "burden of demonstrating what the amount of the recovery would have been had the sale been in compliance with Article 9." *Id.* While the Bank presented evidence of what the logging truck *actually* sold for in a sale that was not compliant with Article 9, the Bank failed to present evidence of what the logging truck *would* have sold for in a sale compliant with Article 9.

██ Even assuming *arguendo* that Ray had testified that he thought the truck was "worth" $5,000 to an eighteen-year veteran of the logging industry and that Ray's experience as a logger qualified him to provide expert testimony on the value of logging trucks, an expert's testimony is meant to assist the finder of fact by pro-

viding the fact-finder insight into a topic about which the fact-finder lacks knowledge or experience. *State v. Allen,* 274 S.W.3d 514, 526 (Mo.App. W.D.2008). Here, the fact-finder was the trial court, as this was a bench-tried case. The trial court received the benefit of hearing all of Ray's testimony. In so doing, the trial court was free to assess the weight to be given to Ray's "expert" testimony. *Whitnell v. State,* 129 S.W.3d 409, 413 (Mo.App. E.D.2004) ("The extent of an expert's training or experience goes to the weight of his testimony...."). "As the trier of fact, the trial court determines the credibility of witnesses and is free to believe or disbelieve all or part of the witnesses' testimony.'" *Zink v. State,* 278 S.W.3d 170, 192 (Mo. banc 2009) (quoting *Blue Ridge Bank & Trust Co. v. Hart,* 152 S.W.3d 420, 426 (Mo.App. W.D.2005)). We defer to the trial court on credibility determinations even if the evidence could support a different conclusion. *McLain v. Johnson,* 885 S.W.2d 345, 348 (Mo.App. W.D.1994). This is the case even where the testimony of a witness is not contradicted by other testimony as "it is well settled that the trial court is free to believe or disbelieve all, part or none of the evidence, including disbelieving evidence that is uncontroverted.'" *Simpson v. Simpson,* 295 S.W.3d 199, 204 (Mo.App. W.D.2009) (quoting *Beery v. Shinkle,* 193 S.W.3d 435, 443 (Mo. App. W.D.2006)); *see also Keen v. Campbell,* 249 S.W.3d 927, 931 (Mo.App. S.D. 2008).

Ray did not testify to the amount the logging truck would have sold for had the sale been in compliance with Article 9 of the Mo. UCC. Even had he done so in any capacity (expert or otherwise), the trial court was free to find that his testimony lacked credibility and was, instead, speculative and deserving of little or no weight on the topic. The Bank presented no other evidence of the logging truck's valuation. Conversely, Mr. Gerlt testified that the Bank's president, just one month prior to the repossession and sale of the logging truck, had approved a release of all collateral securing the Gerlts' $46,500 repayment obligation under the promissory note except for the logging truck. And, Mr. Gerlt testified that he had spent more than $5,000 on fourteen tires for the logging truck not long before the logging truck's eventual sale to Ray.

Under these circumstances, the trial court did not err in limiting the Bank's recovery against the Gerlts under the secured obligation of the promissory note to the proceeds of the Bank's sale of the collateral securing the repayment obligation—the logging truck.

The Bank's point on appeal is denied.

### Conclusion

The trial court's judgment is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. Thus, the judgment is affirmed.

VICTOR C. HOWARD, Presiding Judge, and KAREN KING MITCHELL, Judge, concur.