

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| FRANK CHAN, | ) |
| | ) |
| Appellant, | ) |
| | ) WD87136 |
| v. | ) |
| | ) OPINION FILED: |
| | ) January 8, 2025 |
| ELIZABETH CHAN, | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Boone County, Missouri**
**The Honorable Sue Crane, Judge**

**Before Division Three:** Mark D. Pfeiffer, Presiding Judge,
Gary D. Witt and Thomas N. Chapman, Judges

Mr. Frank Chan ("Father") appeals the judgment of the Circuit Court of Boone

County, Missouri ("circuit court"), which modified a prior parenting plan to award him

*significant additional* parenting time with the two minor children ("L.O.C." and

"L.S.C.") born to him and his ex-wife, Ms. Elizabeth Chan[1] ("Mother"), but did not

award an *exactly equal* split of parenting time as he requested. We affirm.

---

[1] All of the pleadings in this matter list Mother as "Elizabeth Chan," but during her testimony, she stated her name was now "Elizabeth Lindsey" and testified that she was "formerly Elizabeth Chan." No explanation for the change of name appears in the record

## Factual and Procedural History[2]

Mother and Father's marriage was originally dissolved in 2017 by a judgment that provided for joint legal and physical custody of their minor children. At the time of that 2017 judgment, Father was a general surgery medical resident and had a demanding work schedule, often requiring him to work one-hundred hours per week. Due in large part to Father's demanding and unpredictable work schedule, Mother and Father stipulated to a parenting plan that provided Father parenting time for one guaranteed overnight every other weekend and up to two overnights per week as Father's work schedule allowed. The children otherwise resided with Mother.

After Father completed his residency and began practicing emergency medicine, his work schedule lessened considerably and, as such, he wanted to increase his parenting time with the children. Thus, Father filed a motion to modify the 2017 parenting plan in September 2020.

The parties mutually agreed to a temporary parenting plan, which was adopted by the circuit court in March 2021 during the pendency of the modification proceedings. The temporary parenting plan generally[3] provided for Father to receive parenting time

---

before us. Thus, we will refer to her as "Elizabeth Chan" or "Mother" throughout this opinion for the sake of clarity.

[2] "When our Court reviews whether the trial court's decision is supported by substantial evidence, we view the evidence and inferences therefrom in the light most favorable to the trial court's judgment and disregard all contrary evidence and inferences." *K.R. v. S.R.*, 674 S.W.3d 9, 15 (Mo. App. W.D. 2023) (quoting *S.M.S. v. J.B.S.*, 588 S.W.3d 473, 484 (Mo. App. E.D. 2019)).

[3] The temporary parenting plan provided an overriding schedule that evenly split parenting time on birthdays and holidays throughout the year and required Mother and

with the children for five nights over the span of every two weeks—every Tuesday and every other Friday through Sunday—while Mother received parenting time with the children on the remaining days. This parenting time schedule did not separately address different parenting time schedules for summer months versus school-year months.

In his proposed permanent parenting plan, Father requested a modified version of the temporary parenting plan's two-week schedule during the school year, which would additionally provide him parenting time every Monday so that each parent would ordinarily[4] receive the children for seven days out of every two-week period. Mother, meanwhile, requested the circuit court instead make the temporary parenting plan permanent, subject to a few slight modifications the parties agreed upon during a settlement conference.[5]

An evidentiary hearing on the motion to modify was conducted before a Family Court Commissioner ("Commissioner") on January 4, 2023. The parties, each relying primarily on their own testimony, presented different accounts on how the children had adapted to their increased parenting time with Father following the initiation of the temporary parenting plan.

Mother was frustrated with Father for substituting his medical judgment for that of other doctors that had prescribed allergy and skin medication for the children. She also

---

Father to allow the other the first opportunity to provide childcare at times when the scheduled parent was unavailable.

[4] Father's proposed plan also include an overriding schedule for birthdays, holidays, and school breaks.

[5] The details of these modifications are not challenged on appeal.

stated that Father failed to take the children to all of their extracurricular activities or attend all parent-teacher conferences during his parenting time; that the children did not sleep well when they were with Father; that Father refused to monitor their media consumption, causing the children to wake with nightmares when they stayed with her; and that the children were emotionally distraught after Father's parenting time. Mother also presented the testimony of her mother,[6] who testified that she noticed the same emotional struggles with the children after a visit with Father. Finally, Mother's pastor also testified about Mother's devotion to the children and the numerous activities that the children participated in at the church.

Conversely, Father admitted that he unilaterally made the decision that he would only administer medication to the children if and when they were exhibiting symptoms and not on a preventative basis; he felt like the children were getting along well with his current wife and the two children from that marriage; he believed the children were sleeping well and had adjusted very well to increased parenting time with him; he missed one parent-teacher conference due to a medical emergency at his hospital; and he submitted many photos showing the children happy when with him. Father also presented the testimony of his current wife and mother-in-law, both of whom testified that the children had a strong relationship with Father, their step-mother, and their two

---

[6] Pursuant to the directive of section 509.520 (Supp. III 2023), we do not use any witness names in this opinion, other than parties to the underlying litigation. All other statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through February 27, 2024, unless otherwise indicated.

younger half-siblings; and they both also testified that the children had no issues with Father's increased parenting time.

After an initial modification to the parenting plan ordered by the Commissioner and adopted by the circuit court, Father moved for reconsideration and to present additional evidence to the circuit court. A supplementary hearing was held, where Father presented evidence that he and his current wife had made the decision to move much closer to Mother's residence—reducing the drive distance between the two homes from twenty-five minutes to three minutes. Father testified that this move would make the parenting time transitions less time-consuming for the children and would promote a better opportunity for the children to participate in extracurricular activities.

Again, the Commissioner ordered modifications to the parenting plan that, frankly, awarded some parenting-time terms that Father requested, but not everything Father requested. Conversely, the revised parenting plan ordered by the Commissioner awarded some parenting-time terms that Mother requested, but not everything Mother requested.

The Commissioner's order itemized some concerns that the Commissioner had: that the frequency of parenting transitions was not in the children's best interests; that while the children have positive relationships with both parents, they are better adjusted to Mother's household; that Father, a medical doctor specializing in emergency medicine and not allergy or dermatology, would not follow medical advice for the administration of allergy and dermatological medicine for the children; and, Father's obsession with an absolutely identical number of parenting days with the children was motivated primarily by his own selfish desires and not by the children's best interests.

That said, the modified parenting plan ordered by the Commissioner largely followed the temporary parenting plan the parties had agreed to, but it also adopted Father's request for *evenly* split two-week schedules in the summer months and minimized the frequency of parenting time transitions during the school year. In fact, on this last topic of minimizing transitions, Father testified in response to his attorney's questioning at the hearing that—should the court not grant exactly fifty-fifty parenting time—he believed it was in the children's best interests for him to have parenting time on Mondays instead of Tuesdays during the school year to minimize the number of custodial transitions. After the Commissioner addressed the children's best interests in her findings and conclusions, that is *precisely* what she ordered. Essentially, then, Father received *all* of the parenting time that he testified would be in his children's best interests if the court awarded *approximately* equal parenting time instead of *exactly* equal parenting time.

Now, however, Father's argument on appeal is that he should receive *both* Mondays *and* Tuesdays each school week along with alternating weekends because *he* disagrees with the circuit court and believes exactly equal fifty-fifty parenting time is in the children's best interests and, thus, statutorily *required*. Ultimately, by failing to give Father exactly equal fifty-fifty parenting time throughout the entire calendar year, Father claims the Commissioner's order, later adopted by the circuit court, is erroneous.

Father timely appealed, asserting a sufficiency-of-the-evidence challenge to the circuit court's judgment.

## Standard of Review

"In reviewing a court-tried case, we affirm the judgment of the court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or misapplies the law." *Traxel v. Traxel*, 295 S.W.3d 215, 218 (Mo. App. W.D. 2009) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment." *Ivie v. Smith*, 439 S.W.3d 189, 199 (Mo. banc 2014). "To prevail on [a] substantial-evidence challenge, [the appellant] must demonstrate that there is *no evidence in the record* tending to prove a fact that is necessary to sustain the circuit court's judgment as a matter of law." *Pasternak v. Pasternak*, 467 S.W.3d 264, 269 (Mo. banc 2015) (alteration in original) (emphasis added) (quoting *Ivie*, 439 S.W.3d at 200).

## Analysis

In his sole point on appeal, Father asserts error because the circuit court's judgment relating to parenting time did not award "equal parenting time during the school year." Father asserts that the circuit court's judgment fails to include substantial evidence to "rebut" statutory requirements regarding a presumption for equal parenting time.

In 2023, before the circuit court rendered the judgment now appealed from, the statute governing custody and parenting time determinations was amended to create a rebuttable presumption in favor of "equal or approximately equal" parenting time:

7

The court shall determine custody *in accordance with the best interests of the child*. There shall be a rebuttable presumption that an award of *equal or approximately equal parenting time* to each parent is in the best interests of the child. Such presumption is rebuttable only by a preponderance of the evidence in accordance with all relevant factors, including, but not limited to, the factors contained in subdivisions (1) to (8) of this subsection. The presumption may be rebutted if the court finds that the parents have reached an agreement on all issues related to custody, or if the court finds that a pattern of domestic violence has occurred as set out in subdivision (6) of this subsection. When the parties have not reached an agreement on all issues related to custody, the court shall consider all relevant factors and enter written findings of fact and conclusions of law, including, but not limited to, the following:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community. The fact that a parent sends his or her child or children to a home school or FPE school shall not be the sole factor that a court considers in determining custody of such child or children;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence as defined in section 455.010 has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation rights, and the parent or other

8

family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The unobstructed input of a child, free of coercion and manipulation, as to the child's custodial arrangement.

§ 452.375.2 (emphasis added).

The statute does *not* create a presumption in favor of *exactly* equal parenting time but only *equal or approximately equal* parenting time. Father acknowledges that the difference between an *exactly* equal parenting plan and the current parenting plan is one day per week during the school year.

Father offers no explanation for what an *approximately* equal parenting plan would look like under these circumstances.[7] Frankly, it is probable that the parenting plan ordered by the Commissioner and adopted by the circuit court's judgment purports to do just that: award these parents *approximately* equal parenting time. And, it is not lost on this Court that the circuit court was dealing with a situation in which the children were transitioning from a Father who was formerly working one-hundred hours per week during his general surgery residency and seeing the children infrequently to a situation

---

[7] That said, it was *Father* who suggested during his hearing testimony that he receive Mondays instead of Tuesdays for parenting time during the school year if the court was not inclined to order a fifty-fifty split of parenting time. That was the *only* alternative to "equal" parenting time that Father suggested to the court below, and it begs the question of whether Father, himself, considered—at least at the time of the evidentiary hearing—such a split of parenting time during the school year to, in fact, constitute an "approximately equal" amount of parenting time.

9

where the circuit court was trying to balance the parenting time requests of both parents with the best interests of the children.

Irrespective, we know of no precedent that mathematically quantifies what *approximately equal* is to look like, and the parties have cited to no such case precedent. What we do know is that we do *not* agree with Father's suggestion in his appellate briefing that anything less than fifty-fifty parenting time in a parenting plan must constitute error. Section 452.375.2 contemplates that the *best interests of children* may include "equal" *or* "approximately equal" parenting time. And, we believe the legislature's plain language in the statute intends for family courts to address this topic within the context of the parties' specific circumstances. That is precisely what the Commissioner and circuit court have done in this case.

Here, the Commissioner's findings and conclusions, adopted by the circuit court in its judgment, weighed each of the statutorily required factors: the Commissioner (and circuit court) determined that the first, third, and seventh factors were neutral; that no evidence was presented regarding the eighth factor; that the second, fifth, and sixth factors favored Mother's parenting plan because the children were better adjusted to her household and because she provided more appropriate care for the children; and that the fourth factor favored Father because his proposed parenting plan would more evenly split parenting time.

The Commissioner (and circuit court) concluded from weighing these factors that a parenting plan providing for exactly equal parenting time would not be in the children's best interests—largely because the children were not adjusting well to Father's

10

household.  To support these findings, the circuit court cited to concerns with Father's care of the children that Mother raised in her testimony.  And, as previously noted, it was *Father* who testified that awarding him parenting time on Mondays instead of Tuesdays would be in the children's best interests if the court did not award a fifty-fifty split of parenting time.  Because the circuit court was entitled to rely upon this testimony to conclude that providing Mother slightly more parenting time than Father would be in the best interests of the children, its judgment was supported by substantial evidence.

Father, nonetheless, argues the record does not contain *sufficiently strong* evidence for two reasons.

First, Father contends that the circuit court did not give proper weight to his testimony, which contradicted Mother's testimony, and that the presence of this contradictory evidence required the circuit court to defer to the statutory presumption of "equal" parenting time (and by "equal," Father expects fifty-fifty "equality").  We disagree.

At trial, the factfinder is not required to accept all evidence uncritically or weigh all evidence equally; rather, the factfinder is entitled to believe all of the evidence, some of the evidence, or none of the evidence and to resolve contradictory evidence.  *Zink v. State*, 278 S.W.3d 170, 192 (Mo. banc 2009) (quoting *Blue Ridge Bank & Trust Co. v. Hart*, 152 S.W.3d 420, 426 (Mo. App. W.D. 2005)) ("As the trier of fact, the trial court determines the credibility of witnesses and is free to believe or disbelieve all or part of the witnesses' testimony."); *Exchange Bank of Mo. v. Gerlt*, 367 S.W.3d 132, 136 (Mo. App. W.D. 2012) ("[E]ven where the testimony of a witness is not contradicted by other

11

testimony . . . 'it is well settled that the trial court is free to believe or disbelieve all, part or none of the evidence, including disbelieving evidence that is uncontroverted.'"). Because a trial court is free to disregard any evidence in reaching its judgment and because we review the facts and inferences from the record in the light most favorable to the judgment during a lack-of-substantial-evidence challenge, evidence in the record that contradicts the judgment is irrelevant to our consideration. *Ivie*, 439 S.W.3d at 200 ("In addition, this Court has made clear that no contrary evidence need be considered on a substantial-evidence challenge, regardless of whether the burden of proof at trial was proof by a 'preponderance of the evidence' or proof by 'clear, cogent, and convincing evidence.'"); *Carpenter v. Carpenter*, 689 S.W.3d 765, 775 (Mo. App. W.D. 2024) (alteration in original) ("[R]eferring this court to evidence and inferences contrary to the judgment is irrelevant and immaterial to an appellant's point challenging a factual proposition necessary to sustain the judgment as being not supported by substantial evidence.").

Here, the circuit court resolved the conflicts between the parties' evidence favorably to Mother and found that her testimony, which detailed several issues with Father's care of the children, sufficiently demonstrated that fifty-fifty equal parenting time would not be in the children's best interests. The mere presence of Father's contrary testimony did not deprive the circuit court of substantial evidence to support its judgment.

Next, Father asserts that *his* testimony regarding the children's medical treatment should have been given more weight than Mother's testimony because he is a doctor while she has no medical training. We first note that Father did not seek to be designated

12

as an expert witness regarding the children's specific medical issues.  But more importantly, our courts have long held that an expert's opinion is not entitled to more weight, as a matter of law, than a lay witness's testimony or even any weight at all:

> [T]he trial court was not bound by plaintiff's "expert" testimony.  The rules governing opinion and expert testimony are well settled.  The testimony of an *expert is to be considered like any other testimony*, is to be tried by the same test, and receive just so much weight and credit as the jury (or judge) may deem it entitled to when viewed in connection with all other circumstances.  There is no logical distinction between expert opinion testimony and fact testimony and the values of both are to be measured by precisely the same standards.  The rule is not different even though the expert evidence is uncontradicted.  A judge, as the trier of fact, has the authority to weigh the evidence and is not bound by the opinions of experts . . . but may believe all or none of the expert's testimony and accept it in part or reject it in part.

*Beardsley v. Beardsley*, 819 S.W.2d 400, 403 (Mo. App. W.D. 1991) (internal citations and quotation marks omitted) (emphasis added); *Robinson v. Langenbach*, 599 S.W.3d 167, 184 (Mo. banc 2020) (alteration in original) (quoting *State v. Quilling*, 363 256 S.W.2d 751, 752 (Mo. banc 1953)) ("The general rule applies that the trier of fact may assign to expert testimony 'just so much weight and credit as the [trier of fact] may deem it entitled to when viewed in connection with all the circumstances.'"); *Exchange Bank of Mo. v. Gerlt*, 367 S.W.3d at 135-36.[8]

---

[8] A witness's designation as an expert goes to the *admissibility* of the expert's opinion on a specialized topic outside of the factfinder's general knowledge, which a lay witness would not be permitted to give, not the *weight* given to that opinion.  *State v. Presberry*, 128 S.W.3d 80, 86 (Mo. App. E.D. 2003) ("Generally, a lay witness may not testify regarding the witness' opinion on a matter in dispute because the lay witness lacks specialized knowledge about the matter and, therefore, the jury and lay witness 'are in equal positions to form an accurate opinion.'"); 490.065.1(1) ("If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to

Here, even if Father had been qualified as an expert,[9] the circuit court would not have been required to give his testimony additional weight in comparison to Mother's testimony. Thus, the circuit court committed no error in crediting Mother's testimony over Father's testimony in finding her treatment of the children's medical issues more appropriate.

Furthermore, because both of Father's lack-of-substantial-evidence arguments essentially amount to requests for this Court to re-weigh the evidence that was before the Commissioner and circuit court, which we cannot and will not do, we reject them. *Carpenter*, 689 S.W.3d at 777 (internal citation and quotation marks omitted) ("The [appellant]'s citation to [his] own favorable evidence—while ignoring the contrary evidence—and [his] argument that the trial court should have ruled on the issue more favorably to [him], is not a basis for reversal and ignores our standard of review. On appeal, we will not, therefore, reweigh that competing evidence in order to rule for the [appellant].").

Point I is denied.

---

determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.").

[9] Father presented no evidence that the opinion of a doctor specializing in emergency medicine and trained as a general surgeon somehow trumps the medical advice of a doctor trained in allergy or dermatology on issues of medical treatments for allergy or dermatological issues.

**Conclusion**

The judgment of the circuit court relating to the modification to the parties' parenting plan is affirmed.

_____
Mark D. Pfeiffer, Presiding Judge

Gary D. Witt and Thomas N. Chapman, Judges, concur.