**LANDSHIRE FOOD SERVICE, INC., a corporation, and Barry J. Hyken, Appellants,**

v.

**J.A. COGHILL, et al., Respondents.**

No. 49847.

Missouri Court of Appeals, Eastern District, Division Four.

April 15, 1986.

Motion for Rehearing and/or Transfer Denied May 13, 1986.

Warren W. Davis, Clayton, for appellants.

Richard Andrew Barry, St. Louis, for respondents.

CRANDALL, Presiding Judge.

Plaintiffs, Barry Hyken and Landshire Food Service, Inc. (hereinafter collectively referred to as Hyken), sought declaratory judgment as to the ownership of a 1979 Rolls Royce Corniche automobile and a judgment in replevin for return of the vehicle. The trial court found in favor of defendant, J.A. Coghill. The trial court's ruling was based on the failure of the assignment of title to conform to § 301.-210, RSMo (Cum.Supp.1984) and Hyken's failure to qualify as a bona fide purchaser. We affirm.

On August 25, 1984, defendant, an Illinois resident, sold his 1979 Rolls Royce Corniche automobile to a person who claimed to be one Daniel Bellman. Bellman gave defendant a cashier's check in the amount of $94,500. Defendant dated and signed the Illinois Certificate of Title and filled in the name "Executive Jet Leasing" on the transferee line. Defendant's bank later informed him that the check was a forged instrument, and defendant reported the vehicle as stolen.

Early in September, 1984, Hyken, whose hobby was "trading" in expensive, imported cars, responded to an ad in a St. Louis newspaper for the sale of a 1980 Rolls Royce Corniche. Hyken met the alleged owner (hereinafter Seller) at a hotel near the St. Louis airport. Hyken questioned Seller about the discrepancy between the year of the car in the newspaper ad (1980) and the actual year of the car (1979). Seller attributed the error to a newspaper misprint. Seller at this time was using defendant's name, J.A. Coghill, but later was identified as the same man who had represented himself as Bellman to defendant. Seller was asking $62,000 for the car.

After inspecting the auto, Hyken telephoned Erwin Schwarz, a dealer and appraiser of expensive, imported automobiles. In Schwarz's opinion, the asking price was at the low side of the fair market value or "wholesale" and Hyken "could not go wrong" if he bought the car for that amount.

Hyken notified Seller that he intended to purchase the vehicle. When Hyken requested identification, Seller produced a New Hampshire State driver's license with a New Hampshire address and an air carrier crew card with an Illinois address. He did not question Seller about the disparity between the two addresses. Instead, he accepted Seller's explanation that he presently lived in Illinois but was in the process of relocating in the St. Louis area.

On September 4, 1984, Seller met at Hyken's office to complete the sale of the Rolls Royce. He had with him an Illinois Certificate of Title which was signed by J.A. Coghill as Seller, dated August 25, 1984, and showed the transferee as "Executive Jet Leasing." Seller explained that this assignment was an attempted transfer to his company which he had not completed on the advice of his accountants. Seller signed an affidavit stating that the first transferee had been inserted by mistake. Hyken confirmed that the serial number on the automobile matched the serial number on the title. Executive Jet Leasing was then crossed out and "Landshire Foods and B.J. Hyken" were written in as transferees. Hyken gave Seller a cashier's check for $58,500 and a check from Landshire Foods for $3,500. On September 17, Hyken registered the title and paid the sales tax. On October 2, the St. Louis County Police took possession of the vehicle at the request of the Illinois authorities and placed it in a police garage.

In his first point, Hyken alleges that he complied with § 301.210, with the result that he received valid title to the Rolls Royce. Section 301.210 provides in pertinent part:

In the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued, the holder of such certificate shall endorse on the same an assignment thereof, ... and deliver the same to the buyer at the time of the delivery to him of said motor vehicle or trailer.

To be a valid assignment within the meaning of the statute, the form prescribed by the Division of Revenue and found on the reverse side of the certificate of ownership must be completed and signed by the registered owner. In addition, delivery of the certificate must be reasonably contemporaneous with the delivery of the motor vehicle. *Case v. Universal Underwriters Ins. Co.*, 534 S.W.2d 635, 639 (Mo.App. 1976). The purpose of the mandatory requirements of § 301.210 is to prevent fraud and deceit in the sale of cars and to hamper traffic in stolen vehicles. *Faygal v. Shelter Ins. Co.*, 689 S.W.2d 724, 726 (Mo.App. 1985). "Any attempt to buy or sell a motor vehicle without delivery of a certificate of ownership properly assigned is void." *Jackson v. Charlie's Chevrolet, Inc.*, 664 S.W.2d 675, 677 (Mo.App.1984). Noncompliance with § 301.210 means that title to the automobile does not pass and the purported buyer acquires no ownership in the vehicle. *Horton v. State Farm Fire & Casualty Co.*, 550 S.W.2d 806, 809 (Mo. App.1977).

In the present case, defendants challenge the assignment of title as improper because the title was not signed by the registered owner in Hyken's presence and because the title bore a date different from the date of the actual sale. Neither case law nor statute requires that the seller sign the certificate of title in the presence of the buyer. Nor is the disparity between the two dates considered fatal to the proper assignment of title. *See, e.g., Ashby v. National Bond Finance Co.*, 343 S.W.2d 218, 222 (Mo.App.1960). We also note that, although the certificate of title was not notarized, Illinois law does not require that the title be acknowledged before a notary public. Under Missouri law, notarization is not necessary if the out-of-state certificate of ownership does not provide an area for the notary requirements. We therefore hold that the statutory requisites for transfer of title were met.

In his second point, Hyken contends that he qualifies for status as a bona fide purchaser of the Rolls Royce and, as such, his certificate of title will be protected against the claim of defendant, the original owner.

The initial question is whether a bona fide purchaser for value takes good title from one who procured the automobile by a fraudulent purchase? The answer is yes. Where the original owner, although induced by fraud, has voluntarily given to another apparent ownership in the motor vehicle, a bona fide purchaser, who has relied upon that person's possession of the certificate of title and of the vehicle, is protected. *See, e.g., Schrader v. Westport Ave. Bank*, 236 Mo.App. 362, 156 S.W.2d 753, 757 (1941). The person who procures title through fraud receives voidable title and is able to transfer good title to a bona fide purchaser. Although the result may seem harsh, the purpose of this rule is to promote the free transferability of property in commerce. As an aside, we note that this rule is not inconsistent with the established rule that a subsequent purchaser of a *stolen* vehicle does not obtain good title, notwithstanding the fact that such purchaser may be innocent of any wrongdoing. *Id.* For a general discussion of voidable title and the bona fide purchaser, *see generally* Annot., 18 A.L.R.2d 830–833 (1951).

The next issue is whether Hyken was a bona fide purchaser under the facts of this case. Where fraud in the original transfer is shown, a subsequent purchaser has the burden of proving that he was in fact a bona fide purchaser. This proof is necessary because, in Missouri, a certificate of title to a motor vehicle is not conclusive proof of the ownership of such vehicle but is only prima facie evidence of ownership, capable of being rebutted by other evidence. *Skates v. Lippert*, 595 S.W.2d 22, 24 (Mo.App.1979).

 Case law has established the definition of a bona fide purchaser as one who pays valuable consideration, has no notice of the outstanding rights of others and who acts in good faith. *J.C. Equipment, Inc. v. Sky Aviation, Inc.,* 498 S.W.2d 73, 76 (Mo.App.1973). A buyer will not be protected where he is put on notice of the irregularities in a seller's title either by defects in the face of the certificate or by other circumstances. The requisite notice "may be imparted to a prospective purchaser by actual or constructive notice of facts which would place a reasonably prudent person upon inquiry as to the title he is about to purchase." *Id.*

 The trial court, as the trier of fact, was free to believe or to disbelieve any of the testimony. The issue before this court is not whether the trial court could have arrived at a result different from that reached, but whether the trial court erred as a matter of law in reaching its result. If we view the question of whether Hyken met his burden of proving that he was a bona fide purchaser as one of fact, we must affirm the trial court's determination that he did not meet this burden.

In finding that Hyken was not a bona fide purchaser, the trial court focused on the issue of constructive notice. It considered the following evidence: Hyken's knowledge of a previous transaction, as evidenced by a prior assignment on the Illinois certificate of title; his failure to have Seller re-sign and re-date the certificate of title at the time of sale; his failure to question Seller about the two contradictory home addresses; his recognition that the asking price for the Rolls Royce was at the low end of fair market value; and his failure to verify the existence and status of Executive Jet Leasing, the prior transferee named on the title.

Considering the entire record, we find that there was substantial evidence from which the trial court reasonably could have concluded that the title on its face and the totality of the circumstances surrounding the sale were such that Hyken should have been placed on inquiry as to the title of the automobile. The trial court therefore did not err in holding that he was not a bona fide purchaser.

In his last point, Hyken claims that he is entitled to a judgment in replevin. Our ruling on point two mandates the denial of this point.

The judgment of the trial court is affirmed.

KELLY and PUDLOWSKI, JJ., concur.