**BLACKWELL MOTORS, INC. and Vicky DeShields, Appellants,**

v.

**MANHEIM SERVICES CORPO- RATION d/b/a Manheim St. Louis, Respondent.**

**No. ED 104553**

Missouri Court of Appeals, Eastern District, SOUTHERN DIVISION.

Filed: September 19, 2017

Clinton B. Roberts, for Appellants.

Leo V. Garvin, Jr. and Paul M. Maloney, for Respondent.

LAWRENCE E. MOONEY, JUDGE

The plaintiffs, Blackwell Motors, Inc. and Vicky DeShields, appeal the summary judgment entered by the Circuit Court of St. Francois County in favor of the defendant, Manheim Services Corporation, in connection with their suit for title and possession of four vehicles, trespass, and slander. First, because Blackwell obtained the vehicles from a person whose title to the vehicles was void, we conclude that Blackwell, and in turn DeShields, obtained no protectible interest in the vehicles. Second, because Manheim did not give instructions to law enforcement or otherwise involve itself in the criminal investigation and seizure of the vehicles, we conclude that the Bridgeton police officers present during the vehicles' seizure did not act as Manheim's agents. Therefore, we affirm the trial court's grant of summary judgment.

### Factual and Procedural Background

Manheim Services Corporation is a motor-vehicle auctioneer in Bridgeton, St. Louis County, Missouri. The auction is open only to licensed motor-vehicle dealers. Any dealer wanting to buy or sell through the auction must register with an entity called AuctionAccess, which maintains a database of motor-vehicle dealers and their representatives. As a convenience to dealers conducting business at the auction, Manheim has the buying dealer pay the purchase price into a Manheim account. In turn, Manheim issues its own check to the selling dealer. This procedure protects selling dealers from the risk of dishonored checks. Manheim does not become part of the chain of title for a vehicle unless a buying dealer's check is returned as non-negotiable. In that event, the selling dealer assigns its ownership rights to the vehicle to Manheim in consideration for Manheim covering the buying dealer's check.

Springdale Auto Sales, Inc. was a motor-vehicle dealer registered with AuctionAccess and authorized to conduct business through the auction. Someone claiming to be with Springdale contacted Manheim, and requested that Robert Hector be allowed to purchase vehicles at the auction for Springdale. Manheim personnel confirmed that Springdale was an authorized dealer, and faxed paperwork to the telephone number provided by the caller to have Manheim add Hector to the Auction-Access database as an authorized Springdale representative. Hector appeared at the auction shortly thereafter for a sale on February 10, 2009. He had paperwork in hand that listed a new telephone number

for Springdale, and he portrayed himself as a representative of Springdale. When Manheim personnel sought to verify Hector's authorization with Springdale, they were misled into speaking with someone who falsely represented himself as Springdale's owner and falsely confirmed Hector's pretended authority. Purportedly on behalf of Springdale, Hector then sought to buy six vehicles at the auction. The seller of the vehicles had assigned the certificates of title pending identification of the purchaser(s) at auction. Auction staff completed the assignments of the vehicle titles to Springdale when Hector, ostensibly acting on Springdale's behalf, became the high bidder. Hector claimed to pay for the vehicles via six separate checks in Springdale's name and drawn on U.S. Bank. There was, however, no such U.S. Bank checking account number—in Springdale's name or in any other name—and the checks were returned as non-negotiable on February 12, 2009. Manheim reported the incident to Officer David Knapp of the Bridgeton Police Department, who prepared an offense/incident report dated February 14, 2009. The selling dealer at the auction assigned its ownership rights and interests in the vehicles at issue to Manheim.

In the meantime, Hector purported to sell three of the vehicles to Blackwell for a total of $31,000. Blackwell did not pay Springdale or Hector for the vehicles, but rather paid a person named Cordel McElwain.[1] Hector ostensibly sold a fourth vehicle to Blackwell on February 18, 2009 for $8,000.[2] Blackwell again paid Cordel McElwain for the vehicle. Blackwell later professed to sell vehicle 3 to its retail customer DeShields, and vehicles 2 and 4 to other retail customers who are not parties to this lawsuit. Blackwell retained possession of vehicle 1.

Law enforcement seized all four of the vehicles as part of a criminal investigation on April 2, 2009. Officer Knapp and Detective Chris Welby of the Bridgeton Police Department were present when the Missouri Highway Patrol seized vehicles 1 and 2 from Blackwell's premises. The other two vehicles were seized from DeShields and Horn another Blackwell customer by the Missouri Highway Patrol and the Madison Comity Sheriff's Department, respectively. Detective Welby supervised the criminal investigation and vehicle recovery. In addition to his employment with the Bridgeton Police Department, Officer Knapp had worked part-time for Manheim performing security services at the auction since 2007. Knapp was on duty as a Bridgeton police officer when the vehicles were recovered. Detective Welby had also performed some secondary security work for Manheim that ended several months before the February 2009 incident with Hector. David Wright was another Bridgeton police officer who participated in the criminal investigation into the vehicles, but Officer Wright was not present during the recovery of the vehicles.

The State charged Hector with one count of stealing by deceit in excess of $25,000, a class B felony, and six counts of forgery, a class C felony. He pled guilty to all counts. The following exchange occurred during the plea hearing in which Hector acknowledged under oath and on the record that he was not an approved

---

1. Blackwell admitted that it paid Cordel McElwain for the four vehicles. Oddly, the record and briefs are silent as to who Cordel McElwain is and why he was paid. Upon questioning during oral argument, plaintiffs' counsel stated that he did not know who Cordel McElwain is or his role in the events involving the vehicles.

2. We refer to the vehicles as vehicle 1, vehicle 2, and so forth.

agent of Springdale and that he was not authorized to act on its behalf.

[PROSECUTOR]: Yes, your Honor. Counts 1 through 7 all occurred on or about February 10th, 2009 at 12:30 p.m. at 13813 St. Charles Rock Road in the County of St. Louis, State of Missouri.

Count 1, the State would show at trial that Robert B. Hector committed the class B felony of stealing by deceit and that the defendant appropriated six motor vehicles of a value of at least $25,000, which property was in the possession of Manheim St. Louis and defendant appropriated such property from Manheim St. Louis and with the purpose to deprive the victim thereof by deceit in that defendant represented to Manheim St. Louis that he had negotiable checks, which representations were false and known by the defendant to be false and Manheim St. Louis relied on the representations and was thereby induced to part with such property.

Your Honor, Counts 2 through 7, on those counts the State would show in each of those counts that the defendant, Robert B. Hector, committed the class C felony of forgery, in that the defendant, with the purpose to defraud, completed a writing, namely checks, *so that it purported to have been made by the authority of one who did not give such authority.*

* * *

The testimony at trial would be, your Honor, that on February 10th of '09, Mr. Hector went to Manheim St. Louis Auto Auction, he represented himself as an agent authorized to bid on automobiles for Springdale Auto Sales, *the defendant had not been given permission by Springdale Auto Sales to bid on vehicles nor was he an approved agent of Springdale.*

The defendant bid and purchased six vehicles from Manheim (sic) St. Louis of over eighty thousand dollars, the defendant paid for these vehicles with six checks drawn on U.S. Bank. The name on the checks was Springdale Auto Sales but Springdale Auto Sales did not have an account, the same account that's listed on the checks that Mr. Hector passed to Manheim (sic) St. Louis Auto Auction.

THE COURT: Mr. Hector, is what the prosecuting attorney said substantially true and correct?

THE DEFENDANT: Yes, it is, your Honor.

(Emphases added.)

The plaintiffs filed suit against Manheim. In their first amended petition, they asserted claims for replevin, conversion, interference with contract, slander of title, trespass, and slander. Blackwell and DeShields claimed they were good-faith purchasers for value, and thus had good title to and ownership rights in the respective vehicles. Blackwell further claimed that Officers Wright and Knapp, acting as agents for Manheim, solicited the assistance of the Missouri Highway Patrol in seizing the vehicles from Blackwell "on the pretense that the seizure was in connection with their investigation of criminal activity," and causing the vehicles to be delivered to Manheim, Blackwell claimed it suffered damages, including loss of business, loss of reputation, interruption of business, loss of the benefit of its contracts with retail customers, costs associated with replacing the vehicles, and costs of settling with its customers' lenders.

Manheim filed a motion for summary judgment. In their amended response to Manheim's statement of uncontroverted material facts, the plaintiffs denied that Hector was indicted, prosecuted, and pled guilty to stealing and forgery, objecting

only on the basis that such statements were "immaterial and irrelevant."

9. Hector was indicted by the Grand Jury of St. Louis County for the offenses of stealing motor vehicles valued in excess of $25,000 (a Class B Felony as described in Section 570.030 RSMO) and forgery (a Class C Felony as described in Section 570,090). See Affidavit of David Knapp at ¶ 10; Exhibit EE. (Footnote to statutory references omitted).

RESPONSE: Deny. The alleged statement of material fact contained in Paragraph 9 is immaterial and irrelevant to any issue and is, therefore, not a statement of genuine material fact.

10. The criminal charges were prosecuted in the St. Louis County Circuit Court in the case entitled *State of Missouri v. Robert Hector* in Division 3 of that court bearing cause number 09SL-CR03296-01. See Exhibit FF.

RESPONSE: Deny. The alleged statement of material fact contained in Paragraph 10 is immaterial and irrelevant to any issue and is, therefore, not a statement of genuine material fact.

11. Hector pleaded guilty to all charges on June 17, 2010. See Exhibit FF, at page 5, lines 9-11; page 7, lines 13-25; page 8, lines 1-25; and page 9, lines 1-13.

RESPONSE: Deny. The alleged statement of material fact contained in Paragraph 11 is immaterial and irrelevant to any issue and is, therefore, not a statement of genuine material fact.

Importantly, the plaintiffs then admitted that Hector did not have authority to act for Springdale.

16. Robert Hector was not authorized to act on behalf of Springdale Auto Sales, Inc. See Exhibit FF [the above excerpt from the plea hearing transcript] at page 8, lines 20-25 to page 9, lines 1-13.

RESPONSE: Admit. However, Hector was not authorized by Springdale to purchase the vehicles from Manheim, but Manheim transferred the vehicles to him believing that he was the agent of Springdale. Reference: Pages 4-11, Deposition of James Holt, Exhibit 6.

In their first amended petition and throughout their responses to discovery, the plaintiffs stated numerous times that Blackwell purchased the vehicles from *Hector.*

A few weeks later, the plaintiffs filed a statement of additional material facts, seeking to establish that Hector was an authorized buyer for Springdale according to the records of AuctionAccess.[3]

With regard to the trespass and slander counts, Manheim asserted that it did not direct or instruct Officer Knapp or Detective Welby in connection with the criminal investigation and seizure of two of the vehicles from Blackwell. Blackwell sought to demonstrate the existence of a genuine dispute of this material fact through yet another statement of additional material facts.

The trial court entered summary judgment in favor of Manheim, finding no genuine dispute existed that Hector misrepresented himself as a representative of Springdale and did not have authority to act on Springdale's behalf, that Hector gave Manheim six fictitious checks as payment for six vehicles, that Blackwell pur-

---

**3.** The plaintiffs offered no evidence from Springdale, Hector, or AuctionAccess to support their statement. Instead, the plaintiffs offered an affidavit from the president of Blackwell as support for their new assertion regarding the contents of AuctionAccess's records. The affidavit is silent as to how the affiant knows the contents of AuctionAccess's records.

chased four of the vehicles from Hector, and that Hector pled guilty to larceny and forgery. The trial court found that the case of *Moore Equipment Company v. Halferty* governed the *bona fide* purchaser issues in the case.[4] Accordingly, the trial court determined that Hector was not a "purchaser" at the auction, that no title to or ownership interest in the vehicles passed to Hector, that Hector was not acting on behalf of Springdale, and that Hector was unable to transfer title to the vehicles to Blackwell.

The trial court found that the issue of the dual-employment status of Officer Knapp and Detective Welby was governed by *Carmelo v. Miller*.[5] The trial court found that Blackwell had failed to comply with Rule 74.04(c)(2) with a number of its responses, and found *inter alia* that no genuine dispute existed that Knapp was on duty with the Bridgeton Police Department and was present when vehicles 1 and 2 were seized, that Welby was a detective with the Bridgeton Police Department who supervised the investigation and recovery of the vehicles, that neither Knapp nor Welby received direction or instruction from Manheim in connection with the criminal investigation or seizure, and that the criminal investigation and vehicle seizure were validated when Hector admitted the crime.

Blackwell and DeShields appeal.

## Standard of Review

Summary judgment allows a trial court to enter judgment for the moving party where the party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine dispute. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially

*de novo. Id.* When considering an appeal from summary judgment, we review the record in the light most favorable to the party against whom the court entered judgment. *Id.* We can affirm a summary judgment by any appropriate theory supported by the record. *Missouri Bankers Ass'n, Inc. v. St. Louis County,* 448 S.W.3d 267, 270-71 (Mo. banc 2014).

For purposes of summary judgment, a "genuine issue" exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. *ITT,* 854 S.W.2d at 382. "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous," *Id.* Summary judgment is proper where the "genuine issues" raised by the non-movant are merely argumentative, frivolous, or imaginary. *Id.*

"A material fact in the context of summary judgment is one from which the right to judgment flows." *Columbia Mut. Ins. Co. v. Hertford,* 518 S.W.3d 234, 240 (Mo. App. S.D. 2017)(quoting *Goerlitz v. City of Maryville,* 333 S.W.3d 450, 453 (Mo. banc 2011)). Uncontroverted material facts established via Rule 74.04(c) numbered paragraphs and responses are those facts that "demonstrate [the movant's] right to judgment *regardless of other facts or factual disputes.*" *Pemiscot County Port Authority v. Rail Switching Services, Inc.,* Case No. SD34570, 2017 WL 1885292, at *3 (Mo. App. S.D. May 9, 2017)(emphasis in original).

## Discussion

In four points on appeal, the plaintiffs claim the trial court erred in granting summary judgment in favor of Manheim. Specifically, the plaintiffs claim the trial

4.  980 S.W.2d 578 (Mo. App. W.D. 1998).

5.  569 S.W.2d 365 (Mo. App. St. L. 1978).

court erred in applying the law as set forth in *Moore Equipment Company v. Halferty*, in finding that Bridgeton police officers were not acting as Manheim's agents in seizing the vehicles, in finding that the undisputed facts show Hector was not Springdale's agent, and in relying on Manheim's statement of uncontroverted material facts.

## Point I

In their first point, the plaintiffs claim the trial court erroneously applied the law as set forth in *Moore*. The plaintiffs contend that the facts remain in dispute, that Robert Hector was in possession of certificates of title for the vehicles sold to Blackwell, and that Hector acted as an authorized agent of Springdale Auto Sales. We first reject the plaintiffs' contention that material facts remain in dispute. At issue are not the material facts of the case, but rather the legal conclusion to be derived from those facts. We next address the plaintiffs' contention that the trial court erred in applying the Western District's analysis in *Moore* to this case. The plaintiffs argue that *Moore* is inapposite because Hector was in possession of certificates of title for the vehicles and because Hector acted as Springdale's authorized agent.

The trial court determined that *Moore Equipment Company v. Halferty* governed the *bona fide* purchaser issues of this case, and expressly adopted Manheim's interpretation of *Moore*. The facts in *Moore* are indeed similar to those present in our case. Moore Equipment Company entered into a transaction that it believed was for the sale of a John Deere combine to M.N. Nance. 980 S.W.2d at 579-80. Moore dealt with David McConkey who represented to Moore that he was acting on behalf of Nance. *Id.* at 580.

McConkey forged Nance's signature on the purchase order and loan contract/security agreement. *Id.* Moore delivered the combine to Nance's property where McConkey took possession of it, unbeknownst to Moore and Nance. *Id.* After taking possession of the combine, McConkey entered into an agreement to borrow money from Halferty, who was also an equipment dealer, using the combine as collateral. *Id.* Unaware of the transaction in his name, Nance never made any payments on the combine, and Moore attempted unsuccessfully to repossess it. *Id.* However, Halferty and its assignee, Ford Motor Credit Company, had already repossessed the combine after McConkey defaulted on his loan payments. *Id.* Moore sued Halferty and Ford Motor Credit for conversion. *Id.*

The Western District reversed the trial court's grant of summary judgment in favor of Halferty and Ford Motor Credit, and granted summary judgment in favor of Moore. *Id.* at 588. The Court found that the contract between Moore and Nance was a nullity because of the lack of mutuality of agreement of the parties, and that McConkey was not a purchaser because he stole the combine from Moore. *Id.* The Court held that McConkey acquired no title under the transaction between Moore and Nance, that Moore was never divested of title, that McConkey never acquired rights in the combine, and that the security interest held by Halferty and assigned to Ford Motor Credit never attached or became enforceable. *Id.*

Here, we agree with the trial court's interpretation of and reliance on *Moore*, and we apply *Moore's* reasoning to the markedly similar facts of this case. Section 400.2-403(1) RSMo. (2016) [6] provides that:

---

6. All statutory references are to RSMo. (2016)    except as otherwise indicated.

A *purchaser* of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been *delivered under a transaction of purchase* the purchaser has such power even though

(a) the transferor was deceived as to the identity of the purchaser, or

(b) the delivery was in exchange for a check which is later dishonored, or

(c) it was agreed that the transaction was to be a "cash sale", or

(d) the delivery was procured through fraud punishable as larcenous under the criminal law.

(Emphases added.)

■ Citing the provisions of section 400.2-403(1) that allow transfer of good title even when a purchaser gives the seller a check that is later dishonored or procures the goods by fraud, the plaintiffs argue that Hector transferred good title to Blackwell, which was a good-faith purchaser for value that had no notice of the alleged dishonored checks.[7] They contend that section 400.2-403(1) means that "[r]egardless of whether Hector tendered an ultimately dishonored check to Manheim, Hector, whom Manheim assumed was act-ing as agent for Springdale, acquired either good, or at least voidable title to the [v]ehicles from Manheim." This is so, argue the plaintiffs, because "Manheim had possession of the titles to the [v]ehicles, and [by] its agreement with the sellers, had power to transfer same." The plaintiffs then state that Hector is a "purchaser" and acquired all of the seller's title to the vehicles. However, a proper interpretation of section 400.2-403(1), as explained in *Moore*, leads us to conclude that Hector did not receive good title, or even voidable title. Like McConkey in *Moore*, Hector was a thief who received no title whatsoever.

For Hector to have good title, or even voidable title, under section 400.2-403(1), he must have been a "purchaser" who received the vehicles "delivered under a transaction of purchase." *Id.* at 582. Let us focus on whether Hector was a "purchaser."

According to section 400.1-201(33), a "purchaser" is "a person who takes by purchase." A "purchase" "includes taking by sale ... or any other voluntary transaction creating an interest in property." Section 400.1-201(32). A "sale" means "the passing of title from the seller to the buyer for a price." Section 400.2-106(1). A "buyer" is "a person who buys or contracts to buy goods," section 400.2-103(1)(a), while a "contract" means "the total legal obligation which results from the parties' agreement

---

7. A *bona fide* purchaser is "one who pays valuable consideration, has no notice of the outstanding rights of others and who acts in good faith." *Landshire Food Service, Inc. v. Coghill*, 709 S.W.2d 509, 513 (Mo. App. E.D. 1986). Our review of the record reveals that two of the vehicle certificates of title contained irregularities on their face. Vehicles 1 and 4 both had Michigan certificates of title. The Michigan certificates contain a section on the front where the seller is to fill in the seller's name and the purchaser's name. Be-low that is another section where the purchaser is to fill in and sign his or her name. The certificate of title to vehicle 1, in the section that the purchaser is to complete, identifies Robert Hector as the purchaser while the seller's section identifies Springdale as the purchaser. For vehicle 4, the section on the front of the certificate of title to be completed by the purchaser leaves blank the blocks for the purchaser's signature and printed name.

as affected by this chapter and any other applicable rules of law," section 400.1-201(11). In short, "a 'purchaser' is a party to a contract for sale and who agrees under the contract to buy certain goods." *Moore*, 980 S.W.2d at 583.

Hector, by contrast, is not a party to any agreement or contract with the seller or its assignee Manheim because Hector did not agree to buy or contract to buy the vehicles. Hector's sole intent was to steal the vehicles. Furthermore, Hector and the seller did not contemplate the passing of title to the vehicles from the seller to Hector. The seller contemplated passing of title to Springdale, and if there were a "purchaser" under the agreement to buy the vehicles, it would have been Springdale, not Hector. As in *Moore*, we have no "transaction of purchase" between the seller and Hector because the seller in our case sought to contract with Springdale, not with Hector, *Id.* at 582. Again, Hector was not a party to the contract. Thus, just as in *Moore*, we find no mutuality of agreement. Hector defrauded the seller and Manheim to acquire possession of the vehicles and their certificates of title. He pled guilty to stealing and forgery. Thus, Hector was not a "purchaser." He was merely a thief, and "[a] thief's title to stolen property is void." *Paulino v. Computer Renaissance*, 62 S.W.3d 648, 650 (Mo. App. E.D. 2001).

The plaintiffs argue the trial court erred in two ways when it relied on *Moore's* analysis. First, they point to Hector's possession of the certificates of title along with the vehicles, and distinguish *Moore* because the farm equipment at issue in that case had no certificate of title.

■ Under Missouri law, Hector's possession of certificates of title does not constitute conclusive proof of the vehicles' ownership, but is only *prima facie* evidence of ownership, capable of being re-butted. *Landshire Food Service, Inc. v. Coghill*, 709 S.W.2d 509, 512 (Mo. App. E.D. 1986). At common law, a thief could convey no title to his buyer, but the title of an innocent buyer of goods previously obtained by fraud was protected. *Richardson v. Seattle–First Nat'l Bank*, 38 Wash.2d 314, 229 P.2d 341, 342 (1951).

> It is but the enforcement of the old and familiar rule that of two innocent persons, one of whom must suffer by the fraud of a third person, he who has put it in the power of such third person to commit the fraud must be the sufferer. The basis of protection to the *bona fide* purchaser, in cases such as the present one, is the voluntary act of the original vendor in parting with both the title to and possession of the property.

*Id.* But Hector's possession of certificates of title is not dispositive under the facts of this case. The critical factor here is that the seller sought to contract with Springdale, not with Hector. Hector was not a party to the sales contract, but rather a third party who falsely represented himself as Springdale's agent. Courts have long distinguished between cases where a seller intends to sell goods to the person with whom he deals, and cases where a seller is deprived of possession of goods as the result of a false representation of agency.

> "Where the vendor of personal property intends to sell his goods to the person with whom he deals, then title passes, even though he be deceived as to that person's identity or responsibility. Otherwise it does not. It is purely a question of the vendor's intention." *When the possession of goods is obtained by a false representation of agency* "there is no intention on the part of the vendor to sell to the pretended agent or representative and no title passes."

*McGeever v. American Nat'l Red Cross,* 330 Mass. 239, 112 N.E.2d 788, 789 (1953)(quoting *Phelps v. McQuade,* 220 N.Y. 232, 115 N.E. 441, 442 (1917))(emphasis added).

Although the Indiana court in *Dresher v. Roy Wilmeth Company, Inc.* declined to apply the following proposition where the seller in that case had intended to sell to the person with whom he dealt, the court nonetheless agreed with the principle of law that:

> [W]here a vendor delivers his property to another person by reason of deceptive appearances or false and fraudulent representations of the other person, *in the belief that he is contracting a sale with some one* (sic) *else, no title passes,* which will protect even an innocent purchaser for the reason that mutual consent to the contract of sale is lacking and therefore there is no consent. In such cases *the invalidity of the transaction does not depend on the fraud but upon the fact that consent of one of the contracting parties is wanting.*

118 Ind.App. 542, 82 N.E.2d 260, 261-62 (1948)(emphases added). It is this distinction that *Moore* underscores.

The plaintiffs urge us to rely on *Landshire Food Service, Inc. v. Coghill,* instead of *Moore,* but *Landshire* is distinguishable. In *Landshire,* Coghill sold his automobile to a person calling himself Bellman who gave a forged cashier's check as payment. 709 S.W.2d at 511. Coghill reported the car stolen. *Id.* The same person who had called himself Bellman in the first transaction then sold the car to Landshire Foods and B.J. Hyken, identifying himself at that time as Coghill. *Id.* Police seized the vehicle soon after Hyken registered it. *Id.* The

*Landshire* Court confirmed the rule that a *bona fide* purchaser for value takes good title from one who procured the automobile by a fraudulent purchase. *Id.* at 512.[8]

But the facts in our case involve a critical difference. "*Landshire* deals with fraud between the parties to a contract. It does not deal with a third person, a non-party, who commits fraud upon one or both of the parties to a contract." *Moore,* 980 S.W.2d at 584. *Landshire* is within the category of cases where a vendor intends to sell his goods to the person with whom he deals, even though he might have been deceived as to that person's name. This case, on the other hand, is among those where the possession of goods is obtained by a false representation of agency, and mutuality of consent is lacking among the parties to the contract. It is analogous to *Moore* because Hector was not a party to the attempted contract to sell the vehicles to Springdale, but was instead a third party who defrauded the seller, the seller's assignee Manheim, and the buyer Springdale. *See id.* After confirming that a *bona fide* purchaser takes good title from one who procured an automobile by fraud, the *Landshire* Court continued:

> As an aside, we note that this rule is not inconsistent with the established rule that a subsequent purchaser of a *stolen* vehicle does not obtain good title, notwithstanding the fact that such purchaser may be innocent of any wrongdoing.

709 S.W.2d at 512. (Emphasis in original). *Landshire* does not apply to the present case.

Second, the plaintiffs baldly assert that the trial court erred in relying on *Moore* because in this case Hector was, in fact,

---

**8.** Nonetheless, the *Landshire* Court affirmed that Hyken failed to meet his burden of proving he was a *bona fide* purchaser where defects on the face of the certificate of title and the totality of the circumstances should have put him on notice of irregularities in his seller's title. 709 S.W.2d at 513.

acting as the agent of Springdale Auto Sales. However, it is undisputed that Hector was not authorized by Springdale to act on its behalf. The plaintiffs initially admitted such in response to Manheim's statement of uncontroverted material facts.

16. Robert Hector was not authorized to act on behalf of Springdale Auto Sales, Inc. See Exhibit FF at page 8, lines 20-25 to page 9, lines 1-13.

RESPONSE: Admit. However, Hector was not authorized by Springdale to purchase the vehicles from Manheim, but Manheim transferred the vehicles to him believing that he was the agent of Springdale. Reference: Pages 4-11, Deposition of Janies Holt, Exhibit 6.

Let us consider the plaintiffs' response. The plaintiffs respond affirmatively, and fully concede that Hector was not authorized to act on behalf of Springdale. After this concession, the plaintiffs make two statements: (1) that "Hector was not authorized by Springdale to purchase the vehicles from Manheim," and (2) that "Manheim transferred the vehicles to him [Hector] believing that he was the agent of Springdale." These statements do nothing to detract from the plaintiffs' concession. Instead, they buttress the concession by reaffirming that Springdale did not authorize Hector to purchase the vehicles, and that Manheim relied on Hector's purported agency.

In a later filing, the plaintiffs sought to establish that Hector was, after all, an authorized buyer for Springdale—per the records of AuctionAccess—on the date that Hector procured the vehicles from Manheim. The plaintiffs asserted:

6. Robert Hector remained an authorized buyer for Springdale Auto Sales, Inc. with Auction Access through the period of time he purchased the vehicles on February 10, 2010 [sic]. Ref-

erence: Exhibit 8, Affidavit of Kevin Blackwell.

Manheim denied the plaintiffs' assertion, reiterating that Hector misrepresented himself as a representative of Springdale.

Note well the deft phrasing of the plaintiffs' statement. This proposition states only that Hector remained an authorized buyer according to the records of Auction Access, but not that Springdale authorized Hector to act as its agent. This statement does indeed describe how Hector succeeded in his theft of the vehicles. But it does nothing to compromise the binding effect of the plaintiffs' prior admission that Springdale did not authorize Hector to act as its agent. Even if the new statement is true, it fails to negate the plaintiffs' admission that Hector had no authority from Springdale. And even if the records of AuctionAccess did list Hector as "an authorized buyer for Springdale" on the date in question, nothing indicates that those records were correct or trustworthy. To the contrary, the summary-judgment record demonstrates that the AuctionAccess information about Hector's purported agency was falsified to help Hector perpetrate his ruse. We cannot infer Hector's agency without evidence of the trustworthiness of the records of AuctionAccess. And here, we find none.

"A material fact in the context of summary judgment is one from which the right to judgment flows." *Columbia*, 518 S.W.3d at 240. The plaintiffs' later statement creates no genuine issue of material fact. Here, Manheim's right to summary judgment flows from the fact that Hector was not authorized by Springdale to act on its behalf. He was not a purchaser, but rather a thief who accomplished the theft by a false representation of agency, Springdale did not authorize Hector to procure six vehicles from Manheim's auction on February 10, 2009, using forged checks pur-

porting to be drawn on a nonexistent bank, account. Furthermore, Hector pleaded guilty to one count of the class B felony of stealing by deceit and six counts of the class C felony of forgery arising from the events at Manheim's auction on February 10, 2009. During the plea hearing, Hector acknowledged under oath and on the record that it was true and correct that "the defendant [Hector] had not been given permission by Springdale Auto Sales to bid on vehicles nor was he an approved agent of Springdale." The plaintiffs denied Manheim's statements about Hector's prosecution and guilty plea only on the basis that the statements were "immaterial and irrelevant."

We find no genuine dispute that Hector was a thief and not a "purchaser." Neither the vehicle seller nor its assignee, Manheim, ever agreed to contract with Hector; therefore, because of Hector's false representation of agency, we have no mutuality of agreement. The result is that Hector was merely a thief who obtained no title or rights in the four vehicles at issue. *See Paulino*, 62 S.W.3d at 650 (holding that where store manager pled guilty to theft of store's merchandise, his title to the merchandise was void, and he had no power to pass good title to the lead plaintiff, who thus had no power to pass good title to other plaintiffs). Having no title or rights to the vehicles, Hector could not convey any title or rights to Blackwell, who in turn had no title or rights to convey to DeShields or its other retail customers. *See id.* Because Blackwell and DeShields had no title or rights in the vehicles, the claims for replevin, conversion, slander of title, and interference with contract must fail.

■ Replevin and conversion are both remedies, and require proof of the same three elements, including that the plaintiff is entitled to possession of the subject property. *Lafayette v. Courtney*, 189 S.W.3d 207, 210 (Mo. App, W.D. 2006). Having received no title to or rights in the vehicles, Blackwell and DeShields could never prove that they were entitled to possession of the vehicles as required to succeed with either replevin or conversion.

■ In a similar manner, a claim of slander of title requires the plaintiff to demonstrate *infer alia* that it has some interest in the property. *Jeffrey v. Cathers*, 104 S.W.3d 424, 429 (Mo. App. E.D. 2003). Without having received any interest in the vehicles, neither Blackwell nor DeShields could prove a claim for slander of title.

■ To state a claim for tortious interference with a contract or business expectancy, a plaintiff must plead and prove *infer alia* a contract or valid business expectancy. *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 245 (Mo. App. E.D. 2011). Again, without any title to or rights in the vehicles, Blackwell could never prove that it had a contract or valid expectation to sell the vehicles to its retail customers.

■ A defendant is entitled to summary judgment when it shows facts that negate any one of the necessary elements of the plaintiff's claim. *ITT*, 854 S.W.2d at 381. Even if the records of AuctionAccess listed Hector as a Springdale representative on February 10, 2009 as the plaintiffs stated, this fact does not alter the uncontroverted material fact—previously admitted by the plaintiffs—that Hector was not authorized by Springdale to act on its behalf. In short, Manheim prevails because at best, Hector's transfer of the vehicles to Blackwell is a transfer by a thief to a third party.

Manheim has demonstrated a right to judgment as a matter of law based on facts about which we find no genuine dispute

with regard to counts I through IV of the plaintiffs' first amended petition. We deny the plaintiffs' first point.

### Point II

■ In Point II, Blackwell claims the trial court erred in finding that Officer Knapp and Detective Welby of the Bridgeton Police Department were not acting as Manheim's agents. Blackwell argues that substantial evidence shows the officers were acting on Manheim's behalf when they seized the vehicles at issue, thus rendering material facts in dispute.

Blackwell charged Manheim with vicarious liability as the employer of Knapp and Welby.[9] Blackwell's claims for trespass and slander hinge on the contention that when Knapp and Welby accompanied troopers from the Missouri Highway Patrol during seizure of two of the vehicles from Blackwell's premises, Knapp and Welby acted as agents for Manheim.[10] Blackwell argues that the " 'criminal investigation' [was] simply made up after the fact," and has alleged that it was a "hoax."[11] Blackwell has not alleged that any other Manheim employee committed trespass or slander.

■ A private employer does not have immunity front liability for the negligent or wanton acts of an employee performed within the scope of the employee's duties simply because that employee has an official status as a police officer, *Carmelo*, 569 S.W.2d at 367. However, when the employee occupies a dual status as both an employee and a police officer, in the absence of a statute, if the employer does no more than relate the material facts of an incident to the officer and leaves the decision of how to proceed to him or her as a police officer, then the employer is not liable for the acts of the officer. *Id.*

"A material fact in the context of summary judgment is one from which the right to judgment flows." *Columbia*, 518 S.W.3d at 240 (quoting *Goerlitz*, 333 S.W.3d at 453). Manheim is entitled to judgment as a matter of law on the claims of trespass and slander if the uncontroverted material facts establish that Manheim simply related the material facts to the police and left it to the officer(s) in the capacity as police officer(s) to determine the course of action. By establishing this uncontroverted fact, Manheim can negate Blackwell's allegation that Knapp and Welby acted as agents for Manheim in seizing the vehicles.

In its statement of uncontroverted material facts, Manheim asserted that:

> 7. Manheim reported the incident [Hector's use of forged, non-negotiable checks to acquire the vehicles] to the Bridgeton, Missouri police department, Other than reporting the incident, Manheim did not participate in the criminal investigation. See Affidavit of James Holt at ¶ 9; Affidavit of David Knapp at ¶ 15; Affidavit of David Wright 9; and Affidavit of Chris Welby at ¶ 11.

Blackwell first denied the statement as "two separate statements in violation of

---

9. Blackwell alone asserts the claims of trespass and slander contained in the first amended petition.

10. In its first amended petition, Blackwell alleged that Bridgeton police officers Knapp and David Wright acted as Manheim agents during the seizure of the vehicles. However, Blackwell admitted that Officer Wright did not participate in the recovery of the vehicles and was not present at Blackwell's premises when the vehicles were seized. Since filing its amended petition, Blackwell has shifted its contention that Officer Wright acted as a Manheim agent to a contention that Detective Welby acted as a Manheim agent.

11. The reader will recall that the criminal investigation led to Hector's indictment on seven felony counts and plea of guilty to all charges.

74.04(c)(1)" although paragraph seven is easily read and understood as a single thought. Blackwell next asserted generally that the cited Holt affidavit was based on hearsay, and referred to an excerpt of the Holt deposition that is not contained in the record before us. Blackwell then set forth the following selected items of evidence and conclusions:

Third, the Bridgeton Police Department has allowed uniformed officers of the Bridgeton Police Department to work for Defendant Manheim from before February 10, 2009. Officers Welby and Knapp traveled out of the jurisdiction of Bridgeton to St. Francois County to retrieve the vehicles. After getting the vehicles to Bridgeton, Officer Knapp only took pictures of the vehicles and then delivered the vehicles to Defendant Manheim. In the five years before, no Officer in Bridgeton traveled more than a few miles outside of Bridgeton to take possession of a vehicle. Manheim did not have a titled interest in the cars when delivered to Hector. Officers Wright (sic) and Knapp were acting in the interest of Defendant Manheim. Officers Welby and Knapp, in taking possession of the vehicles, and delivering them to Defendant Manheim, were acting outside of the law and were taking possession of vehicles to which they had no right of possession. Reference: Plaintiff's Statements of Additional Facts.

Manheim further asserted:

29. Manheim did not direct law enforcement personnel or otherwise participate in the recovery of the Stolen Vehicles and no Manheim personnel were present when the Stolen Vehicles were recovered. See Affidavit of David Knapp at ¶ 13 and ¶ 15; Affidavit of Chris Wel-

by at ¶ 11; Affidavit of James Holt at ¶ 10.

Blackwell again based its denial on the allegation that the Holt affidavit is hearsay and referenced deposition material that is not in our record. Blackwell reiterated the selected items of evidence and conclusions set forth in connection with paragraph seven, and referenced its statement of additional facts.

Finally, Manheim stated:

49. David Knapp did not perform services for Manheim on April 2, 2009, and he was not paid by Manheim for working (or otherwise) on that date. See Affidavit of David Knapp at ¶ 13; Affidavit of Tammy Renner at ¶ 6.

50. David Knapp did not receive any directions or instructions from Manheim in connection with the criminal investigation and the recovery of the Stolen Vehicles. See Affidavit of David Knapp at ¶ 15.

51. Chris Welby is employed by the Bridgeton police department as a detective and he supervised the criminal investigation and recovery of the Stolen Vehicles. See Affidavit of Chris Welby at ¶ 1 and ¶ 2.

52. Chris Welby did not receive any directions or instructions from Manheim in connection with the criminal investigation and the recovery of the Stolen Vehicles. See Affidavit of Chris Welby at ¶ 11.

Blackwell denied these paragraphs in substantially the same way as it denied paragraphs seven and 29. Blackwell added an allegation that Welby was not conducting a criminal investigation, and that Welby and Knapp "ignored the statement of applicable law given to them" by Blackwell's counsel.[12] Blackwell again referenced its

---

12. As explained in Point I, we have concluded that "the statement of applicable law" provided by Blackwell's counsel was incorrect given the facts of this case.

statement of additional facts as support for its denial.

The affidavits referenced by Manheim directly support the material facts quoted above, and explain how the affiants have personal knowledge of the matters stated. Conversely, Blackwell simply references its statement of additional material facts in support of several of its denials. Even assuming without deciding that such a general reference complies with Rule 74.04, Blackwell's referenced statement does not assert that Knapp and Welby acted as Manheim's agents when the vehicles were seized, or that Manheim gave any direction to the officers or participated or had input into the investigation. Furthermore, the material referenced and attached to Blackwell's statement does not support the allegation that Knapp and Welby acted as Manheim's agents in recovering the vehicles. For example, Knapp's deposition contains testimony that Knapp was on duty with the Bridgeton Police Department when the vehicles were seized from Blackwell. And Knapp was not asked whether he received instructions from Manheim, so his deposition is silent in that regard. Welby's referenced deposition excerpt does not say that he acted as a Manheim agent, or that he received any instructions from Manheim. And the attached excerpt of the Holt deposition does not relate at all to the issue of instructing the police in their investigation or participating in it. Blackwell points to no evidence that Manheim directed Knapp or Welby or involved itself in the criminal investigation.

Blackwell has failed to establish a genuine dispute of material fact. Like its brief on appeal, Blackwell's denials and its referenced statement of additional facts rely on selected facts and items of evidence, mischaracterized as *material* facts, in an attempt to dispute Manheim's contention

that it neither instructed nor directed the police officers nor participated in the criminal investigation. None of Blackwell's selected facts and items of evidence—for example, that Welby and Knapp traveled out of the jurisdiction of Bridgeton to St. Francois County to retrieve the vehicles—is a material fact whose "mere existence is a fact 'from which the right to judgment flows.' ".Columbia, 518 S.W.3d at 240.

Blackwell's claims of trespass and slander against Manheim depend on Knapp and Welby acting as Manheim's agents. When an employee occupies a dual status as both an employee and a police officer, in the absence of a statute, if the employer does no more than relate the material facts to the officer and leaves the decision of how to pursue the matter to him or her as a police officer, then the employer is not liable for the acts of the officer. *Carmelo*, 569 S.W.2d at 367. Consequently, we conclude that Officer Knapp and Detective Welby did not act as Manheim's agents in the criminal investigation and seizure of the vehicles. Manheim established that there exists no genuine issue of material fact in this regard, and that it is entitled to judgment as a matter of law. Thus, we deny Blackwell's second point.

### Point III

In their third point, the plaintiffs claim the trial court erred in finding that the undisputed facts prove that Hector was not an agent for Springdale Auto Sales. They contend that Manheim's statement of material fact fails to comply with Rule 74.04 in that the fact is conclusory and disputed.

As set forth at length in our analysis under Point I, we conclude that Hector was not authorized to act on Springdale's behalf. We deny the plaintiffs' third point.

*Point IV*

Finally, the plaintiffs claim the trial court erred in granting summary judgment because the defendant "has repeatedly failed to comply with Rule 74.04 in its statement of uncontroverted material facts thus totally misrepresenting the facts to the trial court." The plaintiffs' primary complaints in this point are Manheim's references to Hector's stealing the vehicles—rather than to stealing by deceit—and Manheim's repeated use of the term "Stolen Vehicles." Stealing by deceit is a method of stealing. Section 570.030, RSMo. (Supp. 2008). The plaintiffs' argument lacks merit, and we deny Point IV.

## Conclusion

We conclude that Blackwell obtained the vehicles from a person whose title to the vehicles was void; thus, Blackwell, and in turn DeShields, obtained no protectible interest in the vehicles. We also conclude that Officer Knapp and Detective Welby did not act as Manheim's agents in the criminal investigation and seizure of the vehicles. Therefore, we affirm the trial court's summary judgment entered in favor of Manheim on all counts of the plaintiffs' first amended petition.

PHILIP M. HESS, P.J. and ROBIN FULTON, Sp.J., concur.